135 N.J. Super. 565 (1975)
343 A.2d 811
GRETA CHAPPELL, INDIVIDUALLY AND AS GUARDIAN OF MURIEL CHAPPELL, AN INFANT, LLOYD S. KELLING AND HELEN T. KELLING, INDIVIDUALLY AND AS GUARDIANS OF STEPHEN KELLING, AN INFANT, ROGER MAZZELLA INDIVIDUALLY AND AS GUARDIAN OF JOYCE MAZZELLA AN INFANT, JERSEY CITY EDUCATION ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, HILLSIDE EDUCATION ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, AND PLAINFIELD EDUCATION ASSOCIATION, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, AND FLORY NATICCHIA, APPELLANTS,
v.
COMMISSIONER OF EDUCATION OF NEW JERSEY AND THE NEW JERSEY STATE BOARD OF EDUCATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 16, 1975.
Decided July 31, 1975.
*567 Before Judges MICHELS, MORGAN and MILMED.
Mr. Emil Oxfeld, argued the cause for the appellants (Messrs. Rothbard, Harris & Oxfeld, attorneys).
Ms. Mary Ann Burgess, Deputy Attorney General, argued the cause for the respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
This is an appeal from a decision of the State Board of Education dated April 3, 1974 affirming a decision of the Acting Commissioner of Education filed November 2, 1973 which upheld the validity, usefulness and reliability of the statewide achievement tests in reading and *568 mathematics administered to 4th and 12th grade public school students on November 14 and 15, 1972.
Appellants are (1) parents of children attending public schools, and (2) representatives of teacher groups. They had initially commenced an action in the Chancery Division seeking to enjoin the dissemination of the results of the statewide tests. In their complaint in that action they expressed, among other things, concern "with the educational problems in areas where there has been racial unrest, polarization and charges of neglect and indifference to the school system." They contended that the release of the results of the state-wide testing would "cause further division and polarization in the communities." They charged that there was "no valid compelling interest to justify the invasion of their constitutional and statutory rights as well as their right of privacy * * *." The trial judge dismissed the complaint and at the same time enjoined the Commissioner from distributing or publishing the results of the statewide testing program for a period of ten days, the restraint being conditioned upon the plaintiffs' (appellants') "filing a proceeding" within that ten-day period with the Commissioner of Education seeking a review of the Commissioner's action in proposing to distribute and disseminating the results of the tests."
Appellants filed their petition of appeal with the Commissioner of Education in which they sought to have the Commissioner desist from disseminating the results of the November 14 and 15, 1972 tests. In that petition they expressed, among other things, "fear that dissemination of the results of the November 14th and 15th tests as presently planned by the defendant [Commissioner] will violate their constitutional, statutory and common-law rights, will cause polarization within the school communities, racial conflict, degrading stigmatization, illegal tracking classifications, interference with the right to an equal free public education, the right to earn a livelihood, deny them due process, subject them to *569 unfair accountability proceedings, invade their right of privacy, and delay and defeat the education goals allegedly sought to be achieved by and through these tests." Following a hearing on the merits before a hearing examiner, the Assistant Commissioner of Education reviewed the record, including the hearing examiner's report and the exceptions filed thereto, made his findings and conclusions and directed the release of the test results in accordance with rules promulgated by the State Board of Education N.J.A.C. 6:39-1, et seq. The Commissioner found that the Educational Assessment Program (E.A.P.) was "an important component of the content of an educational program." He noted that the tests "have been found to be valid, useful and reliable, and that the hearing examiner recommends the raw scores derived therefrom to be released forthwith." The Commissioner accepted that recommendation and directed "that all raw scores of the E.A.P. tests with respect to school, district, county and state level be released for district review on Nov. 20, 1973." He further directed "that the release date of Nov. 20, 1973, be followed with public release sixty (60) days thereafter, pursuant to the rules of the State Board of Education. (N.J.A.C. 6:39-1 et seq.)." By successive applications thereafter, appellants applied for a stay of the release of the results of the tests: to the State Board of Education, to this court, to the State Supreme Court, and to the Supreme Court of the United States. They were unsuccessful in their efforts to stay the dissemination of the test results. On April 3, 1974, the State Board of Education affirmed the November 2, 1973 decision of the Commissioner of Education for the reasons expressed therein.
It appears that tests have also been administered in 1973 and 1974 and that although individual pupil scores were not reported for the 1972 testing program, such scores have been reported for both 1973 and 1974 in accordance with N.J.A.C. 6:39-1.2(a) which provides that:
*570 * * * individual student data shall be released only to a pupil, his parent or legal guardian, and school personnel and school officials deemed appropriate by the Commissioner.
On this appeal appellants contend that:
(1) The test results should not be disseminated in the manner proposed by the State Department of Education;
(2) The dissemination of the test results and the so-called "interpretive material" are not made valid by the New Jersey Right-to-Know Law (L. 1963, c. 73; N.J.S.A. 47:1A-1); and
(3) The procedure herein proposed by the State Department of Education violates the New Jersey Employer-Employees Act (N.J.S.A. 34:13A-1).
We find no merit in the first and third of these contentions and no relevant force in the second of the contentions. Appellants argue that "If the State had indeed followed the course of treating these tests as a pilot program, without making such a big to-do about a public release, and the results had been restricted for analysis by educational authorities alone, there would certainly be no objection to the program." However, an integral part of the testing program is the meaningful dissemination of the testing results. Such dissemination is governed by N.J.A.C. 6:39-1.2. We are in accord with the statement contained in the brief submitted by the Attorney General, i.e., that these regulations "assure that the test results are accompanied by interpretive data to lessen the possibility of public misinformation which might flow from the indiscriminate and haphazard release of raw, uninterpreted tests results"; and that they "also protect from public release individual student data thereby safeguarding the privacy of those taking the tests in question." The record before us strongly suggests that information provided by these "interpreted" reports will be helpful to state and local school personnel and to the public in the allocation of educational resources; in shaping educational goals; in focusing on the improvement of basic skills; and in shedding light on the functioning of the public schools.
*571 Dissemination of the test results and interpretive materials approved by the Commissioner in accordance with N.J.A.C. 6:39-1.2 does not depend for its validity upon L. 1963, c. 73, N.J.S.A. 47:1A-1 et seq. Statutory authority for the administration of the statewide tests which are the subject of this appeal can be found in N.J.S.A. 18A:4-24, which provides that:
The commissioner shall, by direction or with the approval of the state board, whenever it is deemed to be advisable so to do, inquire into and ascertain the thoroughness and efficiency of operation of any of the schools of the public school system of the state and of any grades therein by such means, tests and examinations as to him seem proper, and he shall report to the state board the results of such inquiries and such other information with regard thereto as the state board may require or as he shall deem proper, but nothing in this section shall affect the right of each district to prescribe its own rules for promotion.
See also, Robinson v. Cahill, 118 N.J. Super. 223, 247 (Law Div. 1972), mod. and aff'd as mod, 62 N.J. 473 (1973) cert. den. 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973). These tests were part of the Educational Assessment Program of the State Department of Education developed to continue the work of the "Our Schools" project initiated by the Department for three principal purposes:
(1) to determine statewide goals for the educational system in New Jersey;
(2) to assess the status of education in New Jersey relative to these goals; and
(3) to recommend projects and programs which will bring New Jersey education closer to these goals.
N.J.A.C. 6:39-1.2, governing the dissemination of the testing results, is grounded in ample statutory authority. N.J.S.A. 18A:4-10, 18A:4-15, 18A:4-16, 18A:4-23, 18A:4-24.
There is, accordingly, no question but that the actions of the Commissioner and the State Board of Education were within their statutory authority. The decision of the administrative agency is thus
*572 * * * entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision was arbitrary, capricious or unreasonable. * * * [Thomas v. Bd. of Ed. of Morris Tp., 89 N.J. Super. 327, 332 (App. Div. 1965), aff'd 46 N.J. 581 (1966)]
See also, Quinlan v. North Bergen Tp. Bd. of Ed., 73 N.J. Super. 40, 46-47 (App. Div. 1962).
From our review of the record in this case we are satisfied that no such showing has been made. The actions of the State Board and Commissioner are entirely reasonable. The Commissioner's findings and conclusions are "supported by substantial credible evidence on the whole record, allowing for agency expertise and evaluation of the credibility of witnesses." Parkview Village Ass'n v. Collingswood, 62 N.J. 21, 34 (1972). See also, Quinlan v. North Bergen Tp. Bd. of Ed. supra. We discern no reason or justification for disturbing them. State v. Johnson, 42 N.J. 146, 162 (1964).
Although the "New Jersey Employer-Employee Relations Act," N.J.S.A. 34:13A-1 et seq. (L. 1968, c. 303), provides for negotiation of terms and conditions of public employment, N.J.S.A. 34:13A-5.3, the public employer (here the state educational authorities) must retain and be permitted to fully exercise the essential management responsibilities vested in it by law. As pointed out by the court in Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973):
Surely the Legislature, in adopting the very general terms of L. 1968, c. 303, did not contemplate that the local boards of education would or could abdicate their management responsibilities for the local educational policies or that the State educational authorities would or could abdicate their management responsibilities for the State educational policies. [at 25]
Here, the initiation, and dissemination of the results, of a testing program are clearly matters of fundamental educational policy.
The decision of the State Board of Education is affirmed.