158 N.J. Super. 436 (1978)
386 A.2d 439
PISCATAWAY TOWNSHIP BOARD OF EDUCATION, APPELLANT,
v.
FRED G. BURKE, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1978.
Decided April 17, 1978.
*438 Before Judges LORA, SEIDMAN and MILMED.
Mr. David B. Rubin argued the cause for appellant (Messrs. Rubin & Lerner, attorneys; Mr. Frank J. Rubin, of counsel; Mr. David B. Rubin on the brief).
Ms. Susan P. Gifis, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney; Mr. William F. Hyland, former Attorney General of New Jersey, Mr. Stephen Skillman, Assistant Attorney General, and Ms. Gifis on the brief).
The opinion of the court was delivered by MILMED, J.A.D.
The Piscataway Township Board of Education (local board) appeals from (1) the action of the Commissioner of Education (Commissioner) requiring it to submit, by August 1, 1977, "an approved plan for racial balance" in the Piscataway public schools, and (2) "a January, 1970, rule of the Commissioner defining racial imbalance." The local board's single overall contention is that "[c]ompulsory racial balance as defined by respondent [Commissioner] is contrary to the Fourteenth Amendment of the United States Constitution."
It appears that in January 1970 the State Department of Education (Department) promulgated the following definition of "Racial Imbalance":
Our working definition is that each district strive to establish school attendance areas that make possible wherever feasible a student body that represents a cross section of the population of the entire district.
If in the elementary grades, for example, the minority population is 25 percent, then each building and each class should try to reflect this percentage as is feasible.
The 1976-77 minority pupil enrollment in the Piscataway school system was about 21% of total enrollment. During *439 the same period, the minority student percentage of total school enrollment at three of the elementary schools was: Arbor school, about 46%; New Market school, about 5%; and Grandview school, about 10%.[1]
In June 1976 the local board submitted to the Commissioner "A Plan for Desegregating the Piscataway Township Schools" which included "a voluntary `Magnet School' program for academically talented fourth and fifth graders" at the Arbor School during the school year 1976-77. Students from outside the attendance area of the school were encouraged but not required to enroll. Similar programs were contemplated for the New Market and Grandview schools during the next two school years. However, voluntary participation in the program at the Arbor school was less than anticipated. The Commissioner then wrote to the superintendent of schools in Piscataway stating, in part, that in order for his office to complete the review of the Piscataway school desegregation plan "to determine its acceptability," it would be necessary that there be forwarded:
A pupil mobility plan that could be implemented for September 1977 in the event that the selected voluntary Magnet school plan for gifted children at Arbor School is not feasible in its design to correct racial imbalance.
The date fixed for submission of this "pupil mobility plan"[2] was April 30, 1977. However, the Magnet school project was not continued for the 1977-1978 school year[3] and, on *440 February 22, 1977, the local board rescinded its June 1976 "policy on Racial Desegregation" and directed its Superintendent "not to submit a `pupil mobility plan' until such time as the Board has an opportunity to discuss the matter with the Commissioner."
The Piscataway school district was then required by the Commissioner to submit, by August 1, 1977:
1. A Board of Education approved policy on equal educational opportunity and school desegregation.
2. A Board of Education approved desegregation plan which will correct racial imbalance in Arbor, New Market and Grandview Schools.
3. A program to prevent further racial imbalance in the schools. The program must include activities to sensitize the Board, staff, students, parents and other citizens to the district's desegregation responsibilities and efforts to provide racial balance.
Instead of submitting the required policy statement, desegregation plan and program, the Piscataway Township Board of Education, on July 5, 1977, filed a complaint in the Chancery Division seeking declaratory and injunctive relief, essentially to free it from compliance with the Commissioner's directive. The trial judge dismissed the complaint for lack of jurisdiction, indicating that the matter properly belonged in the Appellate Division pursuant to R. 2:2-3 (a)(2). This appeal followed.
As the court pointed out in Booker v. Plainfield Bd. of Ed., 45 N.J. 161 (1965):
Whether or not the federal constitution compels action to eliminate or reduce de facto segregation in the public schools, it does not preclude such action by state school authorities in furtherance of state law and state educational policies. [at 170]
The State Department of Education, through its State Board and Commissioner, has broad powers and responsibilities *441 to supervise public education in the State and effectuate constitutional and legislative policies concerning it. See N.J.S.A. 18A:4-10; N.J.S.A. 18A:4-22 et seq.; N.J.S.A. 18A:6-9; Jenkins v. Morris Tp. School Dist. and Bd. of Ed., 58 N.J. 483 (1971); Robinson v. Cahill, 118 N.J. Super. 223 (Law Div. 1972), mod. and aff'd as mod. 62 N.J. 473 (1973), cert. den. 414 U.S. 976, 94 S.Ct. 292, 38 L.Ed.2d 219 (1973); Laba v. Newark Bd. of Ed., 23 N.J. 364, 382 (1957). The "rule" and "action" of the Commissioner complained of are merely suitable steps taken by him designed to avoid racial imbalance in the local public school system, see N.J. Const. (1947), Art. I, par. 5, and Jenkins and Booker, supra, and in no way conflict with any provision of the Fourteenth Amendment to the Federal Constitution.
The actions of the Commissioner and Department under review, being well within the ambit of their authority, are
* * * entitled to a presumption of correctness and will not be upset unless there is an affirmative showing that such decision[s] * * * [were] arbitrary, capricious or unreasonable. * * * [Thomas v. Morris Tp. Bd. of Ed., 89 N.J. Super. 327, 332 (App. Div. 1965), aff'd 46 N.J. 581 (1966)]
See also Chappell v. Comm'r of Education, 135 N.J. Super. 565, 571-572 (App. Div.), certif. den. 69 N.J. 84 (1975). From our review of the record submitted on this appeal, we are satisfied that no such showing has been made. The actions complained of are entirely reasonable. We discern no reason or justification for disturbing them.
The local board should, without further delay, comply with the Commissioner's directive and submit the required statement of policy, desegregation plan and program for review by his office to determine their feasibility and acceptability. See Elliot v. Neptune Tp. Bd. of Ed., 94 N.J. Super. 400, 403 (App. Div. 1967).
The appeal is dismissed.
NOTES
[1] There are 12 public schools in the township school system.

The Attorney General notes in his brief that "current enrollment data suggest that * * * [Grandview] school has achieved a tolerable level of racial balance, its concentration of minority students being over 14%."
[2] Appellant's brief notes that "The Board members were disturbed by this euphemistic term for what is commonly known as busing."
[3] The Superintendent of Schools pointed out that he "could not recommend to the Board that they expend upwards of $100,000 for [Magnet School] programs which appear to have minimal effect on the numerical aspects of racial imbalance."