138 N.J. Super. 564 (1976)
351 A.2d 778
RED BANK BOARD OF EDUCATION, PLAINTIFF-RESPONDENT,
v.
LARRY WARRINGTON, ET AL, AND RED BANK TEACHERS ASSOCIATION, DEFENDANT-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1975.
Decided January 14, 1976.
*566 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Theodore M. Simon argued the cause for appellants (Messrs. Goldberg & Simon, attorneys).
Mr. Martin M. Barger argued the cause for respondent (Messrs. Reussile, Cornwell, Mausner & Carotenuto, attorneys; Mr. Donald B. Steel on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
The issue in this appeal is whether the grievance of a group of teachers was subject to arbitration under the terms and provisions of the contract between their association and the employer board of education. The trial judge held that it was not and entered summary judgment in favor of the board.
Red Bank Teachers Association is the bargaining agent for the teachers of the Red Bank school system. The Association and the board of education negotiated a contract for the period of July 1, 1972 to June 20, 1974. It contained a grievance procedure, the final step of which provided, to the extent pertinent here, as follows:
7. If the decision of the Board does not resolve the grievance to the satisfaction of the Association and the Association wishes review by a third party, they shall so notify the Board through the superintendent within ten (10) school days of receipt of the Board's decision, except in the case of grievance involving any of the following points:
(a) Any matter for which a method of review is prescribed by law or any rule or regulation of the State Commissioner of Education or any matter which according to law is either beyond the scope of Board authority or limited to action by the Board alone. * * * [Emphasis supplied.]
In November 1972 a number of the primary school teachers filed a grievance concerning alleged changes in working *567 conditions previously in existence which, they maintained, were unilaterally altered by the board of education in violation of their collective bargaining agreement. The basis of the grievance was the assignment of an additional teaching period while the teachers' regular classes were being taught music, physical education and art by specialists, whereas in the past they had been given a free period during that time. They contended that these changes violated two provisions of the agreement, the first of which was Article II, paragraph G:
Except as this Agreement shall hereinafter otherwise provide, all terms and conditions of employment applicable on the effective date of this agreement shall remain in full force and effect except that proposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established.
The second provision, Article VI, paragraph D, was as follows:
Classroom teachers in grades four through eight inclusive shall have one preparation period per day. Elementary school teachers shall not be required to remain in the classroom during the period in which the physical education specialist is conducting the class, although they shall remain during periods in which art and music are being conducted with the supervisor present.
The teachers demanded (a) reinstatement of working conditions as they had existed prior to the contract, (b) permission to leave the room while the art teacher was conducting classes, (c) continuation of the 6-hour, 15-minute day, (d) hiring of additional teachers (later withdrawn), and (e) additional compensation for the past changes in the conditions. When the issues remained unresolved after numerous meetings between the parties, the association sought arbitration of the grievance.
Thereafter, the board filed a complaint to enjoin all arbitration proceedings and "requiring appeals to the Commissioner of Education, if appealed at all." The association *568 and the individual defendants counterclaimed to enforce the arbitration provision of the agreement. After a hearing the trial judge ruled that while the grievance fell within the scope of the grievance procedure in the contract, it consisted of "controversies and disputes arising under the school laws" which, by virtue of N.J.S.A. 18A:6-9, the State Commissioner of Education was empowered to hear and determine; consequently, he concluded, the grievance could not be submitted to arbitration under the contract between the parties. Summary judgment was accordingly entered in favor of plaintiff, and defendants appealed.
Defendants contend that (1) the Commissioner of Education has no jurisdiction to entertain claims of violation of the collective bargaining agreement with regard to a unilateral alteration of work load; (2) the grievance is arbitrable under the collective bargaining agreement and the court has no discretion in enforcement of the arbitration provision, and (3) an individual employee is not a proper party defendant in a suit to stay arbitration under a collective bargaining agreement.
At oral argument the board's counsel joined defendants in expressing disagreement with the trial judge's determination that the grievance here was not arbitrable under the contract because it involved a matter "for which a method of review is prescribed by law or any rule or regulation of the State Commissioner." He maintained, however, that the controversy was excluded from arbitration because the subject-matter was "limited to action by the Board alone."
In our view, the trial judge's concept of the arbitration provision in this case was erroneous. We see no point in a provision for binding arbitration of disputes, in an agreement such as the one before us, if it is followed immediately by a clause which, if the judge's interpretation were correct, would effectively eliminate such arbitration as part of the grievance procedure for the resolution of disputes.
Parties are presumed to have contracted with reference to existing law. The law is a silent factor in every contract. *569 Gibraltar Factors Corp. v. Slapo, 23 N.J. 459, 465 (1957), app. dism. 355 U.S. 13, 78 S.Ct. 44, 2 L.Ed.2d 20 (1957); Silverstein v. Keane, 19 N.J. 1, 13 (1955). These principles are especially pertinent where, as here, the agreement was entered into pursuant to a specific authorizing statute; i.e., the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. Thus, in order to give proper effect to the agreement we must examine the statute just cited, as well as the provisions contained in the school laws, N.J.S.A. 18A:6-9, for the determination of controversies.
The Commissioner of Education is given broad power to hear and determine "all controversies and disputes arising under the school laws * * *." N.J.S.A. 18A:6-9. Generally, "disputes involving teachers are cognizable as controversies under school laws." Winston v. So. Plainfield Bd. of Ed., 125 N.J. Super. 131, 140 (App. Div. 1973), aff'd 64 N.J. 582 (1974). See Donaldson v. No. Wildwood Bd. of Ed., 65 N.J. 236 (1974); and In re Tenure Hearing of Grossman, 127 N.J. Super. 13 (App. Div. 1974), certif. den. 65 N.J. 292 (1974). But such disputes might also be the proper subject of grievance procedures adopted pursuant to N.J.S.A. 34:13A-5.3. Id.
The New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., empowers the duly selected representatives of public employees to negotiate agreements with a public employer (a term that includes a school district, N.J.S.A. 34:13A-3(c)) on the terms and conditions of employment. Grievance procedures contained in such agreements may provide for "binding arbitration as a means for resolving disputes." N.J.S.A. 34:13A-5.3.
These statutory procedures for the resolution of controversies and disputes between teachers and boards of education are in pari materia and should be construed together "as the unitary and harmonious whole, in order that each may be fully effective." Porcelli v. Titus, 108 N.J. Super. 301, 309 (App. Div. 1969), certif. den. 55 N.J. 310 (1970). *570 A complicating factor here, however, is that, at the time of the proceedings below, N.J.S.A. 34:13A-8.1 contained a statement that nothing in the act should be construed "to annul or modify any statute or statutes of this State." Our research has disclosed no reported case which specifically reconciles the provision in the New Jersey Employer-Employee Relations Act for permissive "binding arbitration as a means for resolving disputes," with the jurisdiction of the Commissioner of Education to hear and determine "all controversies and disputes arising under the school laws."
The potential conflict between the two statutes was tangentially recognized, though not resolved, in Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973). The court there pointed out that while the New Jersey Employer-Employee Relations Act spoke of "terms and conditions of employment" to be embodied in a negotiated written agreement, and also referred to grievance procedures which "may provide for binding arbitration as a means for resolving disputes,"
[n]owhere in the Act did the Legislature define the phrase "terms and conditions" as used in section 7 nor did it specify what subjects were negotiable and what subjects were outside the sphere of negotiation. In section 10 it did expressly provide that no provision in the act shall "annul or modify any statute or statutes of this State." N.J.S.A. 34:13A-8.1. In the light of this provision it is our clear judicial responsibility to give continuing effect to the provisions in our Education Law (Title 18A) without, however, frustrating the goals or terms of the Employer-Employee Relations Act (N.J.S.A. 34:13A-1 et seq.). [64 N.J. at 24-25.]
The court went to to explain, illustratively but as dictum, that
New Jersey's laws relating to education have had a long-standing provision of specific nature dealing with tenure teachers and their dismissal. N.J.S.A. 18A:6-10; Laba v. Newark Board of Education, 23 N.J. 364, 384 (1957). They have had an equally long-standing provision vesting statutory jurisdiction in the Commissioner of Education over controversies arising under the school laws which have traditionally included dismissal proceedings against tenure *571 teachers. N.J.S.A. 18A:6-9. * * * When the Employer-Employee Relations Act * * * was passed there was no reference to the provisions in the education laws but, as noted earlier in this opinion, there was a blanket statement in Section 10 to the effect that no provision in the Employer-Employee Relations Act shall "annul or modify any statute or statutes of this State." N.J.S.A. 34:13A-8.1. In the light of this strong qualifying statement and, absent further clarifying legislation, we are not prepared to construe the general provision in section 7 (N.J.S.A. 34:13A-5.3) authorizing the parties to agree on grievance procedures providing for "binding arbitration as a means for resolving disputes," as embodying legislative contemplation that the parties may agree on such arbitration in total replacement of the Commissioner's hearing of dismissal procedures now required by the express terms of N.J.S.A. 18A:6-10. * * * * [Id. 64 N.J. at 28-29]
We interpret the above to mean that, unless and until the Legislature spoke otherwise, the general provision in § 7 of the Employer-Employee Relations Act would have to yield to the Commissioner's power to hear matters encompassed within specific sections of the school laws, such as, for example, N.J.S.A. 18A:6-10. This accords with well-settled law that where there is a seeming conflict between a general statute and a specific statute on the same subject, the latter prevails. W. Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336, 339 (1970). We add that disputes over matters predominantly within the scope of educational policy, and thus not proper subjects of either arbitration or mandatory negotiation are, of course, also cognizable by the Commissioner as a controversy arising under the school laws. See Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra, 64 N.J. at 31.
But, since both N.J.S.A. 34:13A-5.3 and N.J.S.A. 18A:6-9 are general provisions, the former dealing with the negotiation of agreements concerning the terms and conditions of employment and the resolution of disputes through grievance procedures, and the latter with the jurisdiction of the Commissioner of Education to hear and determine all controversies and disputes arising under the school laws, the question is not so much which prevails over the other, but *572 how the two can be harmonized so as to give sensible effect to both.
The New Jersey Employer-Employee Relations Act evidences a clear legislative intent that disputes over contractual terms and conditions of employment should be solved, if possible, through grievance procedures. We are convinced, moreover, that where provision is made for binding arbitration of such controversies, recourse for their resolution must be by that means, and not to the Commissioner, for to hold otherwise would effectively thwart and nullify the legislative design expressed in the New Jersey Employer-Employee Relations Act.
Our conclusion is buttressed by two of the 1974 amendments to the New Jersey Employer-Employee Relations Act (L. 1974, c. 123), which appear to supply the clarification mentioned in Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n., supra. One (§ 6) amends N.J.S.A. 34:13A-8.1 by deleting from it the clause "nor shall any provision hereof annul or modify any statute or statutes of this State." The other (§ 4) adds to N.J.S.A. 34:13A-5.3 this sentence:
* * * Notwithstanding any procedures for the resolution of disputes, controversies or grievances established by any other statute, grievance procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.
The extent to which other provisions of the New Jersey Employer-Employee Relations Act may further curtail the jurisdiction of the Commissioner over controversies between teachers and boards of education is not before us and we express no opinion therein.[1] In any case, there are still many areas in which the Commissioner's authority over controversies arising under the school laws remains unimpaired, *573 including cases where the grievance procedure in the agreement does not contain an arbitration clause. The two statutes can coexist harmoniously.
We now address ourselves to the board's contention that the grievance in this case was not arbitrable because the subject-matter involved is an administrative decision not subject to negotiation.
In 1973 our Supreme Court, in a trilogy of school board cases, considered the difficult problem of where to draw the line between "terms and conditions of employment," and those matters which are "predominantly matters of educational policy, management prerogatives or statutory duties of the board of education." In Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, supra, 64 N.J. at 25, the court commented that the "lines between the negotiable and the nonnegotiable will often be shadowy and the legislative reference to `terms and conditions of employment' without further definition hardly furnishes any dispositive guideline.'" It added, however, that
* * * to the extent that it could fairly be accomplished without any significant interference with management's educational responsibilities, the local boards of education would have the statutory responsibility of negotiating in good faith with representatives of their employees with respect to those matters which intimately and directly affect the work and welfare of their employees.
In Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 6-7 (1973), the court held that "working hours and compensation are terms and conditions of employment within the contemplation of the [act]." It said further that "major educational policies which indirectly affect the working conditions of the teachers remain exclusively with the Board and are not negotiable whereas items which are not predominately educational policies and directly affect the financial and personal welfare of the teachers do not remain exclusively with the Board and are negotiable. The lines are obscure and, pending further definitive legislation, they must be drawn case by case." Id. at 7.
*574 See also Burlington Cty. Col. Fac. Ass'n. v. Bd. of Trustees, 64 N.J. 10 (1973).
The facts underlying the grievance in this case are not in substantial dispute. Approximately 29 primary level teachers were affected at the commencement of the 1972-1973 school year by the board's decision to require them to teach a portion of their classes while art and music were being taught by specialists in those subjects. The association asserts that this was also the case when the regular classes were taught by physical education specialists. It claims that in the past the regular teachers were given a free and unassigned period during that time, and that the change concerned the teaching load and violated the "past practice clause" of the agreement. The board's response is that the action it took was in accordance with the agreement between the parties and that the "past practice clause" had been altered by the negotiated contract. It contends, further, that the procedure merely implemented the provision in the contract requiring teachers to remain in their classroom during art and music. The association views the directive as a change in teacher work load, while the board considers it an administrative decision not subject to negotiations.
We do not agree with the board's construction of its directive. There is no doubt whatever that it directly concerned the teachers' work load and thus clearly affected the terms and conditions of their employment. Cf. West Orange Bd. of Ed. v. West Orange Ed. Ass'n, 128 N.J. Super. 281 (Ch. Div. 1974). The issue was clearly a matter for mandatory negotiation under the contract. The association was thus within its contractual rights in pursuing the grievance through arbitration. Cf. Englewood Bd. of Ed. v. Englewood Teachers, supra, 64 N.J. at 8.
The judgment is reversed. The matter is remanded with direction to enter summary judgment in favor of defendants directing plaintiff to proceed with arbitration of the grievance in accordance with the contract.
NOTES
[1] Nor are we here called upon to consider other situations in which arbitration may be restrained under the provisions of the Act. See Englewood Bd. of Ed. v. Englewood Teachers, 135 N.J. Super. 120, 124 (App. Div. 1975).