157 N.J. Super. 74 (1978)
384 A.2d 547
IN THE MATTER OF GALLOWAY TOWNSHIP BOARD OF EDUCATION, RESPONDENT-APPELLANT, AND GALLOWAY TOWNSHIP EDUCATION ASSOCIATION, CHARGING PARTY-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1977.
Decided January 20, 1978.
*77 Before Judges LORA, SEIDMAN and MILMED.
Messrs. Murray, Meagher & Granello, attorneys for respondent-appellant (Mr. Robert J. Hrebek on the brief).
Messrs. Starkey, White & Kelly, attorneys for charging party-respondent (Mr. James M. Blaney on the brief).
Mr. Sidney H. Lehmann, General Counsel, attorney for Public Employment Relations Commission (Mr. Don Horowitz, Deputy General Counsel, on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Galloway Township Board of Education (Board) appeals from a decision and order of the Public Employment Relations Commission (PERC) entered after a hearing on an unfair labor practice charge filed by Galloway Township Education Association (Association). The Association alleged therein that a schedule change imposed *78 by the Board unilaterally and without negotiation, which increased by 15 minutes the length of the school day for certain teachers, was contrary to the provisions of N.J.S.A. 34:13A-5.4(a)(1), (3) and (5). PERC held that the change involved a modification of a term and condition of employment which had to be negotiated with the majority representative before being established. It also ordered the Board to pay each affected teacher an amount equivalent to one day's salary, "to be computed as 1/200 of the 1975-1976 annual salary."
PERC "cross-applies" for an order affirming and enforcing its decision and order, pursuant to N.J.S.A. 34:13A-5.4(f).
The facts are not in substantial dispute. Two of the schools operated by the Board had been on split sessions for a number of years. The teachers at those schools who were assigned to the morning session were on duty from 7:30 A.M. until 1:30 P.M.; those assigned to the afternoon session were on duty from 11:45 A.M. until 5:45 P.M. In August 1975, each teacher at one of the two schools (the Arthur Rann School) was notified of a new teaching schedule which required the teachers at both sessions to report 15 minutes earlier each day. The Association protested the unilateral change and filed an unfair labor practice charge with PERC.
It appears that at the time in question the parties were in the process of negotiating a successor to their collective negotiations agreement which had expired on June 30, 1973, but under which they were still operating. The only provision in the contract concerning teachers' hours related to schools on full session, where the teachers were generally required to arrive 30 minutes prior to the commencement of the students' instructional day and were permitted to depart 15 minutes following the close thereof. The published "Board Policy" prescribed the "in-school" time for a teacher to be at least 7 1/4 hours. It also provided that in the case of double sessions the length of the "in-school day" could be shortened to less than, but not extended beyond, those *79 hours in the discretion of the school principal and the superintendent of schools.
Teachers in schools not in split sessions worked a seven-hour day; those on split sessions, prior to the change, worked a six-hour day. All received the same salary without regard to the number of hours worked.
A new agreement covering the period July 1, 1975 to June 30, 1976 was ratified in April 1976. It included a clause concerning teachers' hours identical to the one in the former contract. The parties stipulated at the hearing below that during the negotiations of the new agreement there had been no discussion of the problem here involved.
The hearing examiner found that the lengthening of the working hours for teachers at the Arthur Rann School "related to required subjects for collective negotiations," and that the unilateral action of the Board "while engaged in collective negotiations" constituted an unfair labor practice within the intendment of the statute. PERC affirmed the hearing examiner's report, but added the award of back pay referred to above.
The Board contends on appeal that (1) PERC abused its discretion "by rendering a decision on a charge of failing to bargain in good faith where the parties had mooted the issue by reaching a negotiated agreement"; (2) PERC lacked jurisdiction to issue a back pay award or a punitive award; (3) the finding that the 15-minute increase in teachers' hours at the Arthur Rann school constituted a per se violation of N.J.S.A. 34:13A-5.4(a)(5) is not supported "upon substantial evidence on the record as a whole," and (4) the "decreased hours of work enjoyed by the split session teachers at the Arthur Rann School did not constitute a term and condition of employment" (not raised below).
We consider first the argument advanced by the Board that the "decreased hours of work enjoyed by the split session teachers" did not constitute a term or condition of employment. Its theory is that the decision was a matter of *80 major educational policy within the Board's management prerogative, in that the change was beneficial to the students by offering them an increased instructional day while keeping the work day of the teachers less than that of teachers not on split session.
It is now well-settled that the length of a teacher's work day is a term and condition of employment and, as such, is mandatorily negotiable. Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 6-7 (1973); In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12, 25 (App. Div. 1977); Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564, 574 (App. Div. 1976); see West Orange Bd. of Ed. v. West Orange Ed. Ass'n, 128 N.J. Super. 281, 285 (Ch. Div. 1974). The fact that the length of the work day of the split-session teachers would still be less than that of other teachers even after the increase does not lead to a different result. Cf. Englewood Bd. of Ed. v. Englewood Teachers, supra.
The Board contends next that since negotiations for a successor agreement were in progress at the time, the change in the work day was not "a per se refusal to negotiate in good faith," and therefore not an unfair labor practice under N.J.S.A. 34:13A-5.4(a)(5). It maintains, in reliance upon N.L.R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962), that because the issue of the increase in the work hours of the split-session teachers was not on the negotiating agenda, inquiry should have been made by PERC into the Board's "subjective" good faith. PERC'S position, which we believe to be the sounder one, is that it was a per se refusal by the Board to negotiate in good faith, where the Board made a unilateral change in the existing working conditions of a group of its teachers, even though the decision was made as to a matter not under discussion during contract negotiations.
The issue in Katz was whether the statutory duty to bargain collectively was violated where the employer, without first consulting a union with which it was carrying on bona *81 fide contract negotiations, instituted changes in matters which were subjects of mandatory bargaining and which were in fact under discussion. While the court held there that the N.L.R.B. in such case could find that a unilateral change by an employer in the terms and conditions of employment constituted an unfair labor practice without also finding the employer to be guilty of subjective bad faith, it does not follow therefrom that the same result may not be reached merely because the subject-matter was not in fact under discussion.
N.J.S.A. 34:13A-5.3 plainly states in pertinent part that "[p]roposed new rules or modifications of existing rules governing working conditions shall be negotiated with the majority representative before they are established" (emphasis supplied). The record here is devoid of any indication that the Board made any effort at all to comply with its statutory duty to negotiate the change with the Association before putting it into effect. We consider it as much a "refusal to negotiate in good faith" for the Board to act unilaterally during ongoing contract negotiations where the subject of the unilateral action, though not under discussion, is a matter for mandatory negotiations, as it is where the subject is in fact under discussion. Such unilateral action, as the court said in Katz, "must of necessity obstruct bargaining." 369 U.S. at 774, 82 S.Ct. 1107. See Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Sec., 149 N.J. Super. 346, 350-351 (App. Div. 1977), certif. granted 79 N.J. 29 (1977).
The Board contends further that in any event PERC should have refrained from ruling on the matter because, prior to the decision, the parties had successfully negotiated a new agreement, thus rendering the case moot. We disagree. The Board's reliance on Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 149 N.J. Super. 352 (App. Div. 1977), certif. granted 75 N.J. 29 (1977), is misplaced. In that case the association had filed an unfair labor practice against the board of education. The parties reached *82 a negotiated agreement, following which PERC issued an order finding the board guilty of an unfair labor practice. Despite PERC's concession that the affirmative relief ordered by it was in fact met by the agreement, it nevertheless sought enforcement of its order, urging that the matter was not moot because of the precedential effect of the cease and desist order, if enforced. This court disagreed, holding that "[a]t the time of its order under appeal there was no controversy before it, no pending unfair labor practice." Here, however, the new agreement did not render the issue moot. The parties admit that the negotiations which led to the new agreement, and the agreement itself, did not resolve the issue of the unilateral increase in teachers' hours at the Arthur Rann School. It remained as an unresolved mandatory subject of negotiation.
We turn now to the matter of the back pay award, which the Board asserts was beyond PERC's jurisdiction. It perceives significance in the fact that whereas the federal statute empowers the N.L.R.B., in the case of an unfair labor practice, to "take such affirmative action including reinstatement of employers with or without back pay, as will effectuate the policies of this Act," 29 U.S.C.A. § 160(c) (emphasis supplied), the comparable provision of our statute, N.J.S.A. 34:13A-5.4(c), does not contain the emphasized words. The Board construes the omission as an indication of legislative intent not to permit "an award of back pay or punitive damages."
The extent of PERC's authority to award back pay as a consequence of an unfair labor practice has not been fully resolved by our courts. In Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Sec., supra, the question arose as to the power of PERC to order back pay after a finding of an unfair labor practice, in the case of secretaries employed by the board whose total working day had been unilaterally reduced. Another part of this court held that the order awarding back pay for services not rendered was ultra vires. We express no view on the correctness of that result, other than *83 to note that the case is pending before the Supreme Court by virtue of a grant of certification, because in the matter under review the working day of the affected teachers was increased, so that the issue of pay for services not rendered does not arise. In any event, we need not explore further PERC's authority to order restitution in the form of back pay under its broad power to take such reasonable affirmative action in the case of unfair labor practices "as will effectuate the policies of this Act." N.J.S.A. 34.13A-5.4(c). We are satisfied, on the facts here present, that the award, if within PERC's statutory authority, was inappropriate.
PERC disclaims any purpose to punish the Board; it maintains that the award was designed solely to compensate the teachers for the additional work performed. It appears without dispute that all teachers in the Board's district received the same salary commensurate with their experience without regard to whether they were at a full (or seven-hour) session school or at a split-session school where, with the 15-minute increase, the length of work day was 6 1/4 hours. The purpose of back pay orders has been declared in NLRB cases to be "`a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.'" NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969), reh. den. 397 U.S. 929, 90 S.Ct. 895, 25 L.Ed.2d 109 (1970). Such orders seek to reimburse employees for actual loss of wages caused by an unfair labor practice. N.L.R.B. v. Martin A. Gleason, Inc., 534 F.2d 466, 479 (2 Cir.1976).
PERC's monetary award was that the Board pay to each affected teacher the equivalent of 1/200th of the annual salary of that teacher, or approximately one day's pay as defined by N.J.S.A. 18A:30-6. This, according to PERC, "was found to be a reasonable make-whole award for the teachers which would best effectuate the purposes of the Act." But the *84 split session teachers here suffered no loss of income by reason of the 15-minute increase in their work-day. Their salary remained the same as that of teachers working a seven-hour day. The award did not make them whole; rather, it gave them more than they were actually entitled to. We therefore modify PERC's decision and order by vacating so much thereof as orders the payment of 1/200th of the 1975-1976 annual salary to the split sessions teachers in question.
By way of "cross-appeal," PERC applies to us under N.J.S.A. 34:13A-5.4(f) for an appropriate order affirming and enforcing the decision and order of the Commission "in the above-captioned unfair practice proceeding * * *." The application is denied without prejudice. The Board was within its rights in seeking a judicial review of the Decision and order. To paraphrase that which we said in Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, supra at 355, there is no reason to speculate that PERC's order, upon our affirmance thereof, will not be complied with by the Board. If the Board fails to do so, PERC may renew its application. We therefore perceive no need to respond to PERC's exposition of its reasons "for assuming that it is a proper party to seek enforcement in these matters," prompted by the concurring opinion in Galloway Tp. Bd. of Ed. v. Tp. Ed. Ass'n, in which, as PERC puts it, "Judge Morgan expressed displeasure with this Commission's participation in the appeal advocating enforcement of its order below."
As modified, the decision and order under review is affirmed.