168 N.J. Super. 45 (1979)
401 A.2d 711
IN THE MATTER OF MAYWOOD BOARD OF EDUCATION, RESPONDENT AND CROSS-APPELLANT, AND MAYWOOD EDUCATION ASSOCIATION, APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1979.
Decided April 3, 1979.
*49 Before Judges LYNCH, CRANE and HORN.
Mr. Theodore M. Simon argued the cause for appellant and cross-respondent (Messrs. Goldberg & Simon, attorneys; Mr. Sheldon H. Pincus on the briefs).
Mr. David A. Wallace argued the cause for respondent and cross-appellant (Mr. Gerald L. Dorf, attorney).
Mr. Don Horowitz, Deputy General Counsel, argued the cause for Public Employment Relations Commission (Mr. Sidney H. Lehmann, General Counsel, attorney).
*50 The opinion of the court was delivered by LYNCH, P.J.A.D. (retired; temporarily assigned).
This case involves the propriety of an order of the Public Employee Relations Commission (PERC) concerning certain actions taken by the Maywood Board of Education (board) and which the Maywood Education Association (Association) charged were unfair labor practices (hereafter ULP) within the meaning of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-5.4(a) (1) and (5) (hereafter the act).
The thrust of the Association's complaint is that the board refused to negotiate the reduction of its teaching force when it dismissed one tenured librarian, did not renew the contracts of several nontenured teachers[1] and expanded the work day of kindergarten teachers and the "pupil contact time" of two physical education teachers. The Association also contends that PERC erred by not awarding a monetary remedy for such violations of the act as PERC found to have been committed by the board.
In its opinion reported at 3 NJPER 377 (1977), PERC held: (1) the board's decision to dismiss Joan Conley, a tenured librarian, was lawful and was not negotiable; (2) however, the board violated the act by refusing to negotiate regarding the "impact" of dismissing Ms. Conley both as to her and as to the remaining librarian, and the impact of the reduction in force (hereafter RIF) on the terms and conditions of employment of the remaining teachers; (3) the board must, within 60 days of the decision, restore the status quo ante as to the working hours of the kindergarten and physical education teachers and negotiate the impact on those teachers for the period during which their work load was changed.
*51 The Association appeals, contending that the PERC order was inadequate as to the remedy for the unfair labor practices of the board and that this court should order compensation to the affected teachers for labor performed in excess of preexisting terms and conditions of employment.
The board cross-appeals. It contends that PERC's order was in error (1) in requiring it to negotiate the "impact" of its RIF; (2) in requiring it to restore the status quo ante as to the kindergarten and physical education teachers, and (3) in requiring it to negotiate the impact of its action with respect to those teachers.
On its part PERC contends that the board waived its right to appeal the PERC order since it did not take exception to the recommended report of the hearing examiner, most of which was adopted in the PERC decision. PERC seeks enforcement of its order pursuant to N.J.S.A. 34:13A-5.4 (f).
Thus the issues are:
(1) Is the impact of Conley's dismissal negotiable (as to her)?
(2) Is the impact of the RIF on the remaining librarian and other teachers negotiable?
(3) Is the increase in the work load of the kindergarten teachers negotiable?
(4) Is the increase in "pupil contact time" of the physical education teachers negotiable?
(5) Did the board waive its right to appeal by not filing exceptions to the hearing examiner's report?
(6) Whether PERC should have made a monetary award for the unfair labor charges which are sustained?
(7) Whether an enforcement order should issue as to matters which are now moot (e.g., by settlement of the issue concerning the kindergarten teachers)?

I

Negotiation of the "impact" of the RIF on Joan Conley (tenured librarian).
It is uncontroverted that the RIF by the board was for reasons of economy. Therefore, PERC held the dismissal *52 of Conley was lawful pursuant to N.J.S.A. 18A:28-9. Nevertheless. PERC also held that the "impact" on Conley from "her discharge to her reemployment" must be negotiated as long as such negotiations do not concern back pay during the period of her layoff. We agree that back pay for Conley would be impermissible.
We have some difficulty in understanding just what the Association contends would be negotiated as to Conley, since her dismissal was concededly lawful. Neither PERC nor the Association has specified what would be the subject of such negotiation. She had no employment relationship with the board as a result of her lawful discharge. Therefore, negotiation of the impact of the RIF on her during the time of her discharge is outside the scope of N.J.S.A. 34:13A-1 et seq.[2] In fact, we conceive that it is inherently illogical to hold on the one hand that dismissal of Conley was entirely lawful and on the other to say that the board must, by negotiation, face adverse consequences from that lawful dismissal.
The Association's argument does imply that since Conley was a tenured teacher she has reemployment rights, and negotiation as to terms and conditions of reemployment is mandatory. Cf. Union City Bd. of Ed. v. Union Cty. Teach. Ass'n, 145 N.J. Super. 435 (App. Div. 1976), certif. den. 74 N.J. 248 (1977).
PERC has previously held that procedural matters dealing with recall and retention are mandatorily negotiable. Cinnaminson Township, 4 NJPER 4039 (1978); Montville Bd. of Ed., 2 NJPER 230 (1975). We disagree. The reemployment rights of tenured teachers are established by N.J.S.A. 18A:28-12, which reads as follows:
*53 If any teaching staff member shall be dismissed as a result of such reduction, such person shall be and remain upon a preferred eligible list in the order of seniority for reemployment whenever a vacancy occurs in a position for which such person shall be qualified and he shall be reemployed by the body causing dismissal, if and when such vacancy occurs and in determining seniority, and in computing length of service for reemployment, full recognition shall be given to previous years of service, and the time of service by any such person in or with the military or naval forces of the United States or of this state, subsequent to September 1, 1940 shall be credited to him as though he had been regularly employed in such a position within the district during the time of such military or naval service. [Emphasis supplied]
Under N.J.S.A. 18A:28-13 the Commissioner of Education is empowered to establish detailed procedures and standards for reemployment. Accordingly, under N.J.A.C. 6:3-1.10 he has done so.
The issue as to the negotiability of reemployment rights was recently dealt with by the Supreme Court in State v. State Supervisory Employees Ass'n, 78 N.J. 54 (1978). There the union argued that provisions under the Civil Service statute regarding reemployment were terms and conditions of employment. The union wanted to negotiate over the criteria and procedures for reemployment. PERC agreed with the union and issued a negotiation order. The State contended that reemployment proposals were not subject to negotiation since they either concerned managerial responsibilities or were terms and conditions of employment which were controlled and preempted by Civil Service statutes and regulations. The court agreed and reversed PERC's order requiring negotiation.
The test for determining whether the adoption of a specific statute or regulation sets a term and condition of employment, thereby preempting negotiation, depends on whether the statute[s] or regulation[s] "speak in the imperative * * * [or] permit a public employer to exercise a certain measure of discretion." State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 81. The court defined mandatory or imperative statutes as "those enactments which set up a *54 particular scheme which "shall" be handled as directed." Id. at 82, n. 7. Where a statute or regulation sets a minimum level of rights, negotiation to afford an employee a greater protection is allowable. Where a statute sets down both a minimum and a maximum right, mandatory negotiation is required for a level of protection fitting between. However, where a statute sets a maximum level of rights, "no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable." Id. at 81-82.
In the case at bar, N.J.S.A. 18A:28-12 sets forth a maximum level of rights. It mandates that a RIFed tenured teacher shall be reemployed pursuant to seniority where a vacancy occurs in the future. Pursuant to statute, the Commissioner of Education has established the standards for the determination of seniority for reemployment lists.
In State v. State Supervisory Employees Ass'n, supra, the Commissioner of Civil Service, pursuant to statute, adopted a regulation implementing the statutory right to reemployment. The court found that the statutory scheme set out mandatory procedures for dealing with reemployment rights. Hence, "there is nothing upon which the parties could agree concerning these matters, as they are comprehensively regulated by statute and [agency] rule." 78 N.J. at 87.[3] The same conclusion is applicable here. The act lays down a maximum right which is substantively fixed by the *55 statute and procedurally controlled by the regulation of the Commissioner of Education. There is no indication of an intent of the Legislature to permit negotiation and agreement to supplant the reemployment statute and regulation. Therefore, an order to negotiate the impact of the discharge on the reemployment of Conley is impermissible. And since no employment relationship existed between the board and herself during the period of her dismissal, the order to negotiate the impact of the RIF on her during the time of her discharge is reversed.

II

Negotiation of the "impact" of the reduction in tenured and nontenured staff on the remaining librarian and teachers.
Reduction in force (RIF), whether of tenured or nontenured teachers, if done for reasons of economy, is entirely within the authority of the board. The relevant statutory provision so ordains. N.J.S.A. 18A:28-9. However, PERC ordered the board to negotiate the impact of RIF on the terms and conditions of employment of the remaining librarian and teachers. We disagree and reverse the order to that effect. Again, how can the board be logically confronted with possible adverse consequences from an action which was incontrovertibly lawful?
PERC has held that if the effect of a managerial decision impacts on terms and conditions of employment, the impact on the terms and conditions of employment must be negotiated. See Cinnaminson, 4 NJPER 4039 (1978). Accord, In re Rutgers, the State University, 2 NJPER 13 (1976), where it was said that where managerial decisions relate to terms and conditions of employment they are negotiable if they "have an effect or impact upon the terms and conditions of employment." Here the board contends that to negotiate the RIF is useless, since the only way to restore the status quo ante of other teachers is to rescind the lawful reduction in personnel.
*56 The theory behind the notion that "impact" is negotiable is based on the premise that it is a "permissive" subject of negotiation. See, e.g., Burke v. Bowen, 49 A.D.2d 904, 373 N.Y.S.2d 387, affd. 40 N.Y.2d 264, 386 N.Y.S.2d 654, 353 N.E.2d 567 (Ct. App. 1976), where the New York court recognized three categories of negotiable subjects: mandatory, permissive and illegal, and held that the "impact" of a reduction in force on work load is a permissive subject of negotiation. See also, Annotation, "Bargainable or Negotiable Issues in State Public Employment Labor Relations," 84 A.L.R.3d 242, 291 (1978). But New Jersey has not recognized a "permissive" area of negotiation.
The New Jersey courts have held that decisions of educational policy or managerial responsibilities are illegal subjects for negotiation. No case recognizes a permissive area of negotiation. See Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973) (decision to consolidate departments matter of education policy) (hereafter Dunellen); Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978) (teacher transfers and assignments not negotiable); Chappell v. N.J. Ed. Comm'r, 135 N.J. Super. 565 (App. Div. 1975), certif. den. 69 N.J. 84 (1975) (initiation and dissemination of student tests matter of managerial prerogative); Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees, 64 N.J. 10 (1973) (school calendar not negotiable); North Bergen Tp. Bd. of Ed. v. North Bergen Fed'n Teachers, 141 N.J. Super. 97 (1976) (right to select management candidates from within school system not negotiable); Union Cty. Bd. of Ed. v. Union Cty. Teach. Ass'n, 145 N.J. Super. 435 (App. Div. 1976), certif. den. 74 N.J. 248 (1977) (decision to reduce personnel not negotiable); Bernards Tp. Bd. of Ed. v. Bernards Twp. Ed. Ass'n, 79 N.J. 311 (1979) (decision to withhold teachers' salary increment not negotiable).
In In re Byram Tp. Bd. of Ed., 152 N.J. Super. 12 (App. Div. 1977), the parties requested PERC to determine whether *57 certain decisions were mandatory subjects for negotiation. PERC held that several of the topics were permissive subjects of negotiation. The board of education did not take issue with the question of whether there was a category of permissive negotiation as opposed to mandatory and illegal subjects for negotiation. However, the amicus curiae brief maintained that there was no "permissive" area and matters were either negotiable or nonnegotiable. The amicus alleged that Title 34 of the Revised Statutes provides only for negotiation of terms and conditions of employment and that managerial decisions which possibly "impact" on terms and conditions are not subject to negotiation. The court refused to deal with the issue since it was presented in the amicus brief. It said:
The subject-matter of permissive negotiation is not germane to the Board's appeal, which requires only a resolution of whether certain matters were correctly determined by PERC to be mandatorily negotiable. We therefore decline to consider at this time whether nonmandatory subjects may be negotiated on a permissive basis, or whether the issue is within the jurisdiction of PERC in a scope of negotiation proceedings. An amicus curiae must accept the case before the court with the issues made by the parties. 4 Am. Jur.2d, Amicus Curiae, § 3 at 111 (1962). We doubt that it may raise an issue not raised by them. See Endress v. Brookdale Community College, 144 N.J. Super. 109, 123 (App. Div. 1976). In any event, we prefer that the difficult and possibly controversial implications of permissive negotiations should await a case in which the issue is squarely presented. [at 18].
However, the court in Byram recognized that N.J.S.A. 34:13A-1 et seq. only requires that "terms and conditions" of employment be negotiated. It does not provide that impact of managerial decisions be negotiated. The court noted that it was "not yet evident that the standard evolved by PERC is necessarily inconsistent with the Dunellen standard * * *." 152 N.J. Super. at 22.
But in Ridgefield Park Ed. Ass'n v. Ridgefield Bd. of Ed., supra, 78 N.J. at 162, the Supreme Court held that there were only two categories of negotiable subjects, that is, *58 "mandatorily negotiable terms and conditions of employment and non-negotiable matters of governmental policy," and that only the Legislature could create a permissive category of negotiation. See, e.g., N.J.S.A. 34:13A-16(b). There the court went on to reject PERC's contention that it could order that the issue of teacher transfers and assignments be submitted to arbitration pursuant to the collective negotiation agreement.[4] Therefore, unless the Legislature recognizes "permissive" negotiation, the impact of a managerial decision on terms and conditions is not negotiable. To allow such impact to be negotiated would indirectly contravene the Dunellen analysis which was so strongly reaffirmed in Ridgefield Park.
Applying that conclusion to this case, there is no doubt but that the decision to reduce teacher personnel was based on a managerial prerogative. Therefore, the impact on the remaining teachers is not negotiable. Hence, the order directing the board to negotiate the impact of the reduced manning on the remaining librarian and teachers is reversed.

III

Negotiability as to the increased work load of the Kindergarten teachers.
Effective in the 1975-1976 school year the board increased the working hours of the kindergarten teachers by 20 minutes per day.
*59 Although motivated by a concern for students' safety, the increase in the teachers' work day was a unilateral change in terms and conditions of employment. While a change in the students' school day is permissible, a change in the length of the teachers' work day is mandatorily negotiable. In the Matter of North Brunswick Tp. Bd. of Ed., 4 NJPER 4205 (1978); Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec'ts, 78 N.J. 1 (1978); Ridgefield Park Ed. Ass'n, 78 N.J. 144 (1978); In re Byram Tp., supra, 152 N.J. Super. at 25.
Therefore, the order of PERC requiring negotiation over the change in the kindergarten day is affirmed.

IV

The increase in "pupil contact time" for physical education teachers Alino and Peters.
In 1975-1976 the board assigned extra "pupil contact time" duties to two physical education teachers, Alino and Peters. There were other such teachers in the system but the record is unclear as to how many there were. However, the record does show that such other teachers had 90 minutes a week more of such time than Alino and Peters. And it is the board's contention that the increase in pupil contact time for Alino and Peters was ordered to equalize their teaching load with that of the other physical education teachers. PERC held that the expansion of the contact time of Alino and Peters was a per se violation of the terms and condition of employment and as such was negotiable. It ordered that within 60 days the board (1) restore the status quo ante of Alino and Peters and (2) negotiate in good faith concerning the "impact" on these teachers during the period when the work load of those teachers was unilaterally increased.
It is well established that the extent of teacher pupil contact time is mandatorily negotiable. Middlesex Cty. Coll. Bd .of Trustees, 4 NJPER 4023 (1978); In re Byram Tp. Bd. of Ed., supra, 152 N.J. Super. at 26. However, *60 board contends that if the increase in time of the two teachers is within the negotiated terms of the contract between the parties, or accepted past practices, it is not impermissible. Rather, says the board, if it is within the terms of the contract or past practices, it is not a violation of the terms and conditions of employment.
We agree. In Red Bank Bd. of Ed. v. Warrington, 138 N.J. Super. 564 (App. Div. 1976), the board unilaterally ordered the primary school teachers to teach classes during periods that were previously free periods. Since the order was a direct violation of the "past practice clause" of the contract, the court held that the additional assignments were arbitrable. The primary consideration, therefore, is whether the additional assignment of pupil contact time to Alino and Peters exceeded the terms of the contract and the past practices of the physical education teachers in the district. See In the Matter of North Brunswick Tp. Bd. of Ed., supra, 4 NJPER 4205 (1978). This is also the rule of law followed by the National Labor Relations Board (NLRB). A change in terms and conditions of employment is lawful when consistent with past practices or authorized by a collective bargaining agreement. See Gorman, Labor Law, 400 (1976).
The record before PERC is devoid of any consideration of the terms of the contract between the parties or past practices concerning the mutually accepted pupil contact time. This issue must therefore be remanded to PERC for hearing and findings with respect to the relevant terms and conditions of the contract and past practices. Additionally we note that if PERC finds no change in the pupil contact time as set forth in the contract or past practices, an order to negotiate impact of increased pupil contact time would be erroneous. Therefore, the order herein appealed from is reversed and the matter is remanded to PERC for proceedings in accordance with this opinion.

*61 V

Whether the Board waived its right to appeal by not filing exceptions to the Hearing Examiner's report.
On this appeal PERC strenuously argues that by failing to take exception to the hearing examiner's report, under the doctrine of exhaustion of administrative remedies, the board has waived its right to appeal from PERC's decision. Initially, we note that the doctrine of exhaustion of administrative remedies has no place in this appeal. The board had argued all the positions it now urges on appeal before the hearing examiner, and therefore it exhausted its administrative remedy. PERC, nevertheless, in support of its position, cites its own regulations which provide that any party may file exceptions to the hearing examiner's report (N.J.A.C. 19:14-7(a) and further, N.J.A.C. 19:14-7(b), which provides that "Any exception which is not specifically urged [before the hearing examiner] shall be deemed to have been waived.") PERC thus contends that the board's arguments on appeal must be addressed only to the propriety of the restoration of the status quo ante of the work loads of the kindergarten and physical education teachers, and to those arguments of the Association seeking a remedy beyond that which the hearing examiner recommended. With these modifications it is said that the hearing examiner's order became the final order of PERC. It is further argued that its regulations are "essentially identical" to the effect of the National Labor Relations Act (29 U.S.C.A. § 160 (a) et seq.). PERC then cites several decisions of the federal courts which preclude parties from appealing a decision of the NLRB if no exception had been taken to the report of the examiner.
We reject PERC's reliance on the federal sphere under the National Labor Relations Act (NLRA) for its argument that the hearing examiner's report can become the decision of the Commission. The provisions of NLRA and the New New Jersey Employer-Employee Relations Act are fundamentally distinct from one another. Under the former the *62 statute expressly provides that the report of the "examiner" (or member of the Board who may hear the evidence), if no exceptions are taken to his recommendations, "shall become the order of the Board * * *." 29 U.S.C.A. § 160(c), emphasis supplied. On the other hand, no provision of the act under which PERC operates grants adjudicatory power to a hearing examiner or provides that his order may become the order of the Commission. Under N.J.S.A. 34:13A-5.4 (c) the Commission is to decide an unfair labor practice charge. The statute also provides that the Administrative Procedure Act (N.J.S.A. 52:14B-1 et seq.) shall be applicable. Thereunder, a hearer's report is to be filed with the agency involved and the "head of the agency" shall adopt, reject or modify the recommended report. N.J.S.A. 52:14B-10(c). Thus, it is the Commission which decides the matter. It does so on a review of the entire record. It is therefore axiomatic that the hearer's report is not the final decision, whether or not exceptions are taken thereto. It would be an unreasonable construction of the act to conclude that the Commission should be bound by a report if it contained a clear mistake of law. For example, in this case the hearing examiner found that Ms. Conley, the tenured librarian, could not be dismissed without prior negotiations. Such a holding is contrary to existing law, and PERC itself held so here as it has in prior decisions. See also, N.J.S.A. 18A:28-9. Further, to accept PERC's contention in this respect would prohibit this court from reviewing the hearer's decision, however erroneous it may be. We cannot thus emasculate this court's power to review actions of an administrative agency. We conclude that PERC's adoption of its regulation (N.J.A.C. 19:14-7(b)) purporting to insulate the hearer's erroneous decision in the absence of exceptions is beyond its power and contrary to the statute under which it operates. We therefore hold that failure to except to the report of the hearing examiner does not constitute a waiver of the board's right of appeal.

*63 VI

Whether there should have been a monetary award for those unfair labor charges which have been sustained.
In Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec'ts, supra, 78 N.J. 1 (1978), the Supreme Court determined that PERC has the power to order reinstatement and back pay as a remedy for unfair labor practices. Accordingly, where PERC finds that a party has violated N.J.S.A. 34:13A-5.4(a), it can "make the affected employees whole for their actual losses sustained by reason of the commission of an unfair practice * * *." Id. at 16; emphasis supplied. Accord, N.L.R.B. v. Martin Gleason, Inc., 534 F.2d 466, 479 (2 Cir.1976).
See also, In re Galloway Bd. of Ed., 157 N.J. Super. 74 (App. Div. 1978)[5], where the court affirmed a PERC back pay award. However, the court reversed a monetary award to split session teachers who worked an extra 15 minutes for the reason that none of the affected teachers actually suffered a loss of income by reason of the increase in the teachers' work day. The court said:
* * * split session teachers here suffered no loss of income by reason of the 15-minute increase in their work-day. Their salary remained the same as that of teachers working a seven-hour day. The award did not make them whole; rather, it gave them more than they were actually entitled to. We therefore modify PERC's decision and order by vacating so much thereof as orders the payment of 1/200th of the 1975-1976 annual salary to the split sessions *64 teachers in question. [157 N.J. Super. at 84; emphasis supplied]
The only unfair labor practice which we have sustained in this case relates to the increase in work day of the kindergarten teachers. However, those teachers did not actually lose money thereby. Accordingly, the Association's request that monetary "make whole" damages be awarded is denied.

VII

PERC's request for an enforcement order.
PERC now asks this court, pursuant to N.J.S.A. 34:13A-5.4(f), to issue an enforcement order with respect to the unfair labor charges it sustained. Since we have sustained such charges only with respect to the kindergarten teachers, such request must now be limited to that area. PERC ordered the board to negotiate with the Association concerning the impact of the increased work day and also ordered the status quo ante be restored within 60 days.[6]
The board objects to the issuance of an enforcement order concerning the kindergarten teachers since the underlying issues are moot. Specifically, the board argues: (1) the Association has withdrawn its objection to the increase in kindergarten hours, and (2) the board and the Association have reached a subsequent collective negotiation agreement concerning the kindergarten teachers' work day and compensation.
However, PERC still seeks enforcement of its order below, which requires negotiation as to the impact of the increased work day pursuant to N.J.S.A. 34:13A-5.4(f).
*65 In Galloway Tp. Bd. of Ed. v. Galloway Tp Ed. Ass'n, supra, the court noted that mootness does not necessarily prevent PERC from seeking an enforcement order:
The judicial enforcement of PERC's nonself-executing orders directed by that statute will serve as a pointed deterrent against resumption of the practices PERC found to be violative of the Act. There can be no guarantee that a party charged with an unfair practice, having voluntarily ceased its unlawful conduct, will not at some future time disavow its adherence to the Act's requirements. The imposition of a continuing obligation on that party to conform its conduct to law is the best means of diminishing the likelihood that it will repeat its demonstrated disdain for employee rights and statutory mandate. [78 N.J. at 46]
In that case the board unilaterally withheld a salary increment from the teachers. Subsequent to the institution of appellate proceedings the board and the Association ratified an agreement concerning the salary increments. The Supreme Court held that mootness of issues, resulting from a collective negotiation agreement, occurring after the commission of unfair labor practices but before decision in appellate proceedings, does not vitiate PERC's discretionary authority to seek judicial enforcement of its prior order. In Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec'ts, supra, six of the seven secretaries in the Association charging the unfair labor practices left the Association before appellate review. The Supreme Court held that the fact that most of the charging parties had left did not constitute a dissolution of an association. The court wrote:
The Association remains a potentially viable entity so long as the jobs encompassed in the unit it represents continue to exist. In such circumstances, compliance with PERC's negotiating order could be possible, depending upon post-enforcement events. [78 N.J. at 23-24]
Accord, Red Bk. Reg'l Ed. Ass'n v. Red Bk. Reg'l High School Bd. of Ed., 78 N.J. 122 (1978), wherein the court held that an Association has an independent right, separate *66 from its members, to file a labor grievance. Mootness does not vitiate PERC's authority to seek an enforcement order if there is a "conceivable likelihood of repetition of the Board's unlawful conduct * * *." Galloway Tp. Ass'n Ed. Sec'ts, supra, 78 N.J. at 24. This is because the "existence of a continuing relationship between the parties * * * provides the opportunity and thus increases the possibility that unlawful conduct will be repeated." Id. at 42.
In Galloway Tp. Ed. Ass'n, 78 N.J. at 34, the court sets forth the charging party and PERC's role in an unfair labor practice proceeding:
However, this role changes as the unfair practice proceeding progresses. N.J.S.A. 34:13A-5.4(c) directs that all cases in which an unfair practice complaint has issued "shall be prosecuted before [PERC] * * * by the representative of the employee organization or party filing the charge or his authorized representative." Consistent with the statutory mandate, PERC's regulations state that "the charging party * * * shall prosecute the case and shall have the burden of proving the allegations of the complaint by a preponderance of the evidence." N.J.A.C. 19:14-6.8. The decision as to whether the party charged in the complaint has committed an unfair practice and, if so, the determination of the appropriate remedy therefor are to be made by PERC. N.J.S.A. 34:13A-5.4(c). PERC's role at this stage of the unfair practice proceeding is an adjudicative one.
PERC's involvement in the proceedings is independent of that of the charging party once there is a determination that an unfair practice has been committed. Therefore, the fact that a charging party withdraws its objection to a change in terms and conditions after a decision that an unfair practice has been committed does not divest PERC of its discretion to seek an enforcement order. Therefore, even though the issue as to the kindergarten teachers is moot so far as the parties are concerned, PERC's order which mandates negotiation of the issue is still viable. In that respect its application for such an order is granted.

*67 Conclusions

We conclude that:
(1) PERC's decision is affirmed insofar as it holds:
(a) that Ms. Conley's dismissal was lawful and is not negotiable;
(b) the increase of the work day of the kindergarten teachers is negotiable and an enforcement order shall issue with respect thereto even though the issue may be moot;
(c) a monetary award is not appropriate.
(2) PERC's decision is reversed insofar as it holds:
(a) the "impact" of its reduction in force (RIF) of tenured and nontenured staff is negotiable as to Conley and the remaining teachers;
(b) the increase in "pupil contact time" of the physical education teachers is negotiable and the status quo ante shall be restored as to them.
(3) The issue as to the increase in pupil contact time of the physical education teachers is remanded to PERC for proceedings in accordance with this opinion. Jurisdiction is not retained.
(4) The board did not waive its right to appeal by failing to file exceptions to the hearing examiner's report.
NOTES
[1] This is no longer an issue because all parties agree that a decision not to renew contracts of nontenured teachers is not negotiable.
[2] This is not to suggest that a collective negotiation agreement cannot provide for items such as severance pay, fringe benefits, accumulated sick days, etc., to be given a teacher at the time of discharge.
[3] Compare Bernards Tp. Bd. of Ed. v. Bernards Tp. Ed. Ass'n, 79 N.J. 311 (1979), wherein a statute and regulations adopted by the Commissioner of Education pursuant thereto, allowed a teacher to appeal the denial of a managerial prerogative to withhold a salary increment to the Commissioner of Education. The court held that a clause in a contract which allowed advisory arbitration on the propriety of the denial of a salary increment did not interfere with the exercise of the management decision since it was statutorily subject to review and reversal by the Commissioner of Education. Nor did such a clause interfere with the statutory authority granted to the Commissioner.
[4] It is this point which led Judge Conford, P.J.A.D. (temporarily assigned), to file a separate opinion concurring in part and dissenting in part. Judge Conford agreed that the arbitration in Ridgefield should be enjoined. However, he disagreed with the majority that "there is no legal category of permissively negotiable items in public employment relations but only the mandatory category of `terms and conditions' * * *." He went on to write that he felt impact of managerial decisions should be permissively negotiable:

* * * a public employer may at its option choose to negotiate a permissive term, i.e. on which involves inherent managerial policy but also impacts appreciably upon the welfare of employees * * *. [Emphasis supplied]
[5] Unlike the Appellate Division decision in Galloway Tp. Bd. of Ed. v. Galloway Tp. Assn. of Ed. Sec'ts, supra, 149 N.J. Super. 346 (App. Div. 1977), which was reversed in 78 N.J. 1 (1978), the Appellate Court in In re Galloway, supra, 157 N.J. Super. 74, upheld the propriety of a back pay award to a teacher who suffered a pay loss as a result of an ULP. However, In re Galloway rejected a monetary award for teachers who suffered no actual pay loss. This decision was never appealed and is consistent with the dictates in Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec'ts, 78 N.J. 1 (1978).
[6] We have been advised by letters from the Association after oral argument that the dispute between the parties concerning the kindergarten teachers has been resolved. PERC has subsequently withdrawn its request for enforcement of the order as it pertains to the restoration of the status quo ante of kindergarten teachers.