BURLINGTON COUNTY COLLEGE FACULTY ASSOCIATION, PLAINTIFF-RESPONDENT, v. BOARD OF TRUSTEES, BURLINGTON COUNTY COLLEGE, DEFENDANT-APPELLANT.

Reargued September 11, 1973—Decided November 20, 1973.

Mr. *Myron H. Gottlieb* argued the cause for the defendant-appellant (*Messrs. Kessler, Tutek and Gottlieb,* attorneys).

Mr. *William S. Greenberg* argued the cause for the plaintiff-respondent (*Messrs. Sterns & Greenberg,* attorneys; *Mr. Michael J. Herbert,* on the brief).

The opinion of the Court was delivered by

JACOBS, J. The Law Division held that the defendant Board of Trustees, Burlington County College, was obligated under the New Jersey Employer-Employee Relations Act (*N. J. S. A.* 34:13A–1 *et seq.*) to negotiate the format of the college calendar with the plaintiff Burlington County College Faculty Association as exclusive representative of the members of the faculty and certain other employees at Burlington County College. 119 *N. J. Super.* 276 (1972). The defendant appealed to the Appellate Division and we certified before argument there. The matter was heard along with *Dunellen Board of Education v. Dunellen Education Association,* 64 *N. J.* 17 (1973) which was decided today.

The parties have duly negotiated contracts pursuant to *N. J. S. A.* 34:13A–5.3. Their negotiations have dealt with compensation, hours, work loads and other matters admittedly bearing on the terms and conditions of employment along with grievance procedures. However the defendant has declined to negotiate on the college calendar which it believes to be a matter of major educational policy exclusively within management's prerogative and not mandatorily negotiable under the Act. The college calendar fixes the length and division of the college year. In some colleges it is made up by the two traditional semesters and in others it is made up by extensions or variations thereof. In Burlington College the calendar consists of two fifteen-week terms along with a seven-week spring term and a six-week summer term. This is said to be consistent with a trend toward lengthier or year-round college calendars. While the calendar undoubtedly fixes when the college is open with courses available to students, it does not in itself fix the days and hours of work by individual faculty members or their work loads or their compensation. These matters, the defendant readily acknowledges, are mandatorily negotiable under the Act though the negotiations are to be conducted in the light of the calendar."

Dr. Evans has been president of Burlington County College since its inception. Before there were any faculty members or students, he and other administration personnel examined the calendars at other community colleges, examined the various considerations which were peculiarly applicable to Burlington and recommended to the Board of Trustees that it adopt a calendar substantially like the one now in effect. The Board did so and when faculty members were later appointed they were fully aware of the college calendar. The governance structure at the college now includes a calendar committee consisting of administration personnel, faculty representatives and student representatives. Although some of the faculty representatives are members of the plaintiff Association, the Association as such has not been

asked to designate a representative or representatives; the omission seems to us unfortunate though not crucial to the issue at hand.

Dr. Evans testified that the Board of Trustees has at all times considered the calendar to be an exclusive management prerogative and that the calendar has a definite relationship to the budget. As he put it: "The calendar the college adopts helps to determine to a great extent the number of students that can attend in a given academic year and the number of student credit hours that are produced, and a significant portion of the budget is dependent on the production of student credit hours. State reimbursement is based on that as well as tuition." Dr. Evans also indicated that the calendar was geared specially to the type of student at Burlington College and to the type of community it served. He pointed out that many of the students found it convenient to "make up work" in the spring term or to "accelerate the work" within the construction of the college calendar. He also pointed out that during the spring term all faculty members do not teach full loads and "some of them have opportunities for curriculum development on new courses there." All in all his testimony left little doubt that the choice of calendar represented a major educational determination by the Board of Trustees acting on recommendations of its administrative officials.

Although the calendar undoubtedly has some practical effect on the faculty's employment arrangements (119 *N. J. Super.* at 278–279) we are satisfied that under the approach set forth in *Dunellen Board of Education v. Dunellen Education Association, supra,* it was not a subject of mandatory negotiation. As was there noted, section 10 of the New Jersey Employer-Employee Relations Act expressly provides that no provision in the Act shall "annul or modify any statute or statutes of this State." The statute authorizing the creation of county colleges such as Burlington, provides that the Board of Trustees shall be responsible "for the management and control" of the college, subject to rules and

regulations of the Board of Higher Education. *N. J. S. A.*
18A:64A–11; see also *N. J. S. A.* 18A:64A–12. The Board
of Trustees may not abdicate its management and control
responsibilities but must negotiate on terms and conditions
of employment. *Lullo v. Intern. Assoc. of Fire Fighters,* 55
*N. J.* 409, 440 (1970). Though as pointed out in *Dunellen,*
the lines may often be indistinct, those drawn by the Bur-
lington Board of Trustees seem to us to have fairly effec-
tuated the legislative goals. It negotiated on the matters
directly and intimately affecting the faculty's working terms
and conditions, such as compensation, hours, work loads,
sick leaves, personal and sabbatical leaves, physical accom-
modations, grievance procedures, etc. It declined to nego-
tiate the major educational policy of the calendar though it
did make provision in its goverance structure for a calendar
committee with student, faculty and administration represen-
tatives. While, in the interests of sound labor relations, it
might well have also discussed the subject with officially
designated representatives of the Association, it was under
no legal mandate to do so.

The decisions elsewhere have taken conflicting positions
as to whether the calendar is a subject of mandatory nego-
tiation but since they turn on the particular provisions of
their own statutes, which differ from ours, they are of little
pertinence here. Thus in *Joint School District No. 8 v. Wis-
consin Emp. Rel. Bd.,* 37 *Wis. 2d* 483, 155 *N. W. 2d* 78
(1967), the court dealt, not with a college calendar as here,
but with the calendar of the Madison, Wisconsin public
school system. It held that the calendar was negotiable but,
significantly, the Wisconsin Statute had no provision com-
parable to our section 10 (*N. J. S. A.* 34:13A–8.1). *Cf.
West's Wis. Stat. Ann.* § 111.91 (*Cum. Supp.* 1973). In
*West Hartford Education Association v. De Courcy,* 162
*Conn.* 566, 295 *A. 2d* 526 (1972), the court dealt with the
calendar of the Hartford, Connecticut public school system;
it held that it was not mandatorily negotiable, finding from

the pertinent history and language that such was the legislative intent. 295 *A. 2d* at 534.

In *Pennsylvania Labor Relations Bd. v. State College Area School Dist.,* 7 *Centre Co. L. J.* 181 (*Pa. Ct. Com. Pleas* 1972), *aff'd, State College Ed. Ass'n. v. Pennsylvania Labor Rel. Bd.,* 306 *A. 2d* 404 (*Commonwealth Ct. of Pa.* 1973), the court had occasion to determine whether the State College Area School Board was obliged to negotiate with the State College Area Education Association on the subject of calendar. The statute directed, in effect, that there be negotiation on wages, hours and other terms and conditions of employment but not on inherent managerial policy. The Labor Board held that a provision that the school would "officially close" at noon on the last day of classes for Thanksgiving, Christmas, Spring and Summer Vacations was a proper subject for mandatory negotiation. In reversing this holding, Judge Campbell made the following comments:

It should be noted that this matter has nothing to do with the number of days worked nor the number of hours per day to be worked by employees. It pertains to the school calendar. We firmly believe that when school begins, when it ends, when the buildings are opened, when children shall be admitted and when holidays occur are matters of inherent managerial policy as regulated by the public school code and under no circumstances should be made items of collective bargaining. We respectfully suggest that the Labor Board confused the issue of hours of employment with the matter of when school would officially close and for this reason we must overrule the Labor Board on this point.

Compare Wernick, J., in *City of Biddeford v. Biddeford Teachers Ass'n.,* 304 A. 2d 387, 421 (Me. 1973) : "Thus, the commencement and termination of the school year and the scheduling and length of intermediate vacations during the school year, at least insofar as students and teachers are congruently involved, must be held matters of 'educational policies' bearing too substantially upon too many and important

non-teacher interests to be settled by collective bargaining or binding arbitration." 304 *A. 2d* at 421.

The fixing of the college calendar clearly involves a major educational determination which traditionally has been the exclusive responsibility of those entrusted with administering the college. Nothing in New Jersey's Employer-Employee Relations Act deals specifically with the subject and, bearing section 10 thereof in mind (*N. J. S. A.* 34:13A–8.1), we are unable to discern a legislative purpose that it become the subject of mandatory negotiation between the administration and faculty representatives. If there be any such purpose it may hereafter be legislatively expressed in clear and distinct phraseology. Absent such phraseology, it appears to us that the sounder judicial course is to hold, as we now do, that the college calendar is not a proper subject of mandatory negotiation and that the lower court's holding to the contrary was erroneous. *Cf. Delaware River and Bay Auth. v. International Org., etc.,* 45 *N. J.* 138, 148 (1965); *Board of Ed., Borough of Union Beach v. N. J. E. A., et al.,* 53 *N. J.* 29, 46 (1968); *Lullo v Intern. Assoc. of Fire Fighters, supra,* 55 *N. J.* at 416, 440.

Reversed.

*For reversal*—Justices JACOBS, HALL, SULLIVAN, PASHMAN and CLIFFORD—5.

*For affirmance*—None.