141 N.J. Super. 97 (1976)
357 A.2d 302
BOARD OF EDUCATION OF THE TOWNSHIP OF NORTH BERGEN, A BODY CORPORATE AND POLITIC, PLAINTIFF-RESPONDENT,
v.
NORTH BERGEN FEDERATION OF TEACHERS, LOCAL 1060, AMERICAN FEDERATION OF TEACHERS AFL-CIO, AN UNINCORPORATED LABOR ORGANIZATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1976.
Decided April 27, 1976.
*99 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Richard Plaza argued the cause for appellant (Mr. Victor P. Mullica, attorney).
Mr. Joseph J. Ryglicki argued the cause for respondent (Messrs. DeBona, Goldberg & Johnson, attorneys).
PER CURIAM.
Defendant Federation of Teachers (Federation) petitioned the Public Employment Relations Commission (PERC) for the appointment of an arbitrator to settle a grievance claimed to arise out of the collective bargaining agreement existing between the Federation and plaintiff board of education. The Federation alleged that the board had violated paragraph 17 of the agreement by appointing one Nicholas Sacco as an acting vice-principal without following the criteria for promotion established in accordance with paragraph 17; specifically that vice-principal appointees have three consecutive years of experience (i.e., tenure) in the North Bergen School system.
After the appointment of an arbitrator several hearings were scheduled but were then postponed at the board's request. Ultimately, the board filed a complaint in the Chancery Division requesting that the pending arbitration be restrained.
The Chancery Division judge, after holding a hearing on the board's request, held that the provision in paragraph 17 of the agreement, directing the Federation and the board to set up criteria for promotion, was not arbitrable. Thereafter, he entered a judgment permanently enjoining the Federation from arbitrating the issue of promotions. It is from that judgment that defendant appeals.
*100 Paragraph 17 of the agreement between the board and the Federation, effective at the time this dispute arose, provides, in pertinent part, as follows:
(a) Promotion should be made from within the system if staff members are certified and qualified. Notification of all promotional vacancies will be given to all teachers and applicants will be given 10 school days to file for the vacancy. * * *
(b) A committee composed of the Superintendent, or his designee, and the president of the bargaining agent, or his designee. shall determine the criteria for qualifications. The President of the bargaining unit of the Administrators and Supervisors, or his designee, shall participate in the determination of criteria for qualifications for promotional vacancies when any of its members may be eligible for said promotions. The Superintendent will interview those candidates who are certified and qualified and will make his recommendations to the Board of Education for appointment. When qualifications are equal, seniority shall be the deciding factor.
(c) If fewer than three members of the staff are certified and qualified, the Superintendent may recommend to the Board of Education the appointment of a certified and qualified person from outside the system.

* * * * * * * *
(e) In all promotions, the power of appointment rests solely with the Board of Education.

* * * * * * * *
It is unclear from the record whether "criteria for qualifications" have ever been agreed upon by the parties. The Federation stated in its petition before PERC that there was a stipulation that vice-principal appointees have three consecutive years experience in North Bergen schools. However, at argument below the attorney for the board seemed to imply that agreement had never been reached. The court below did not resolve this issue, however, holding instead that the matter was not arbitrable.
By resolution of July 25, 1974 the board appointed Sacco as acting vice-principal commencing August 1, 1974. Sacco had initially been appointed to a teaching position in North Bergen on January 16, 1974, to commence on February 1. It is Sacco's appointment which touched off this dispute.
N.J.S.A. 18A:27-4 empowers boards of education to promulgate rules for the employment of teachers:
*101 Each board of education may make rules, not inconsistent with the provisions of this title, governing the employment, terms and tenure of employment, promotion and dismissal, and salaries and time and mode of payment thereof of teaching staff members for the district, and may from time to time change, amend or repeal the same, and the employment of any person in any such capacity and his rights and duties with respect to such employment shall be dependent upon and governed by the rules in force with reference thereto. [Emphasis supplied]
The board relies on this section, as well as N.J.S.A. 18A:16-1 (empowering boards of education to employ teachers, principals and other school employees, and to "fix and alter their compensation and the length of their terms of employment") and N.J.S.A. 18A:26-2 (requiring teaching staff members to be certified) to support its contention that the establishment of promotional criteria is solely a management prerogative, which is nondelegable, nonnegotiable, and therefore nonarbitrable. The board concedes that pursuant to the agreement the Federation has a right to participate in the establishment of qualifications, but absent a meeting of the minds, the board could impose its own qualifications without arbitration.
Our Supreme Court has recently had occasion to deal with similar disputes in three cases: Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1 (1973); Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees, 64 N.J. 10 (1973), and Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973). The most succinct statement of the law as developed in these three cases is set forth in Englewood, wherein the court said:
* * * [M]ajor educational policies which indirectly affect the working conditions of the teachers remain exclusively with the Board and are not negotiable whereas items which are not predominantly educational policies and directly affect the financial and personal welfare of the teachers do not remain exclusively with the Board and are negotiable. [64 N.J. at 7]
Englewood held that hours and compensation were terms and conditions of employment and hence were negotiable and *102 subject ultimately to arbitration. The Burlington case held that the fixing of the college calendar was not a proper subject of mandatory negotiation since it involved a major education determination. Dunellen held that the consolidation of the chairmanships of the social studies and English departments into a newly created humanities department was predominantly a matter of educational policy which had at most a remote and incidental effect on the terms and conditions of employment, and was therefore not a proper subject of either mandatory negotiation or arbitration.
Significantly, in Dunellen the Supreme Court noted that the "lines between the negotiable and the nonnegotiable will often be shadowy," 64 N.J. at 25, and that they would have to be drawn on a case-by-case basis. In subsequent decisions the following have been determined to be major educational policies, not terms and conditions of employment, and therefore neither arbitrable nor mandatorily negotiable: guidelines on tenure, Ass'n of N.J. State Col. Fac. v. Dungan, 64 N.J. 338, 353-356 (1974); the initiation and dissemination of results of statewide achievement tests in reading and mathematics, Chappell v. N.J. Comm'r of Ed., 135 N.J. Super. 565 (App. Div. 1975), and faculty sign in  sign out procedures, Galloway Tp. Bd. Ed. v. Galloway Tp. Ed. Ass'n, 135 N.J. Super. 269 (Ch. Div. 1975). On the other hand, it has been held that the State Board of Education's guidelines, insofar as they embodied restrictions on outside employment additional to those in the bargaining agreement, should have been negotiated. Ass'n of State Col. Fac. v. N.J. Bd. of Ed., 66 N.J. 72 (1974).
The Federation relies, in part, on Porcelli v. Titus, 108 N.J. Super. 301 (App. Div. 1969), certif. den. 55 N.J. 310 (1970), which upheld the actions of the Newark school board in altering unilaterally the procedure provided by the applicable bargaining agreement for promotions. That action was undertaken in response to widespread civil disorders in the community and the need, as determined by the *103 board, to promote more blacks to positions of greater responsibility. The Federation argues that the decision impliedly recognizes the negotiability of promotional criteria. We disagree. That issue was never directly raised by the parties and the case is of little help in resolving the present dispute.
The Federation also points to a number of federal decisions which it contends support its position. However, none of these cases deals in the sphere of education; they are concerned with private-sector industrial labor relations. They are clearly irrelevant to the issue before us.
The board argues that qualifications for certification have been set forth in Title 6 of the New Jersey Administrative Code (see, e.g., N.J.A.C. 6:11-9.1, 6:11-9.2, 6:11-10.7, 6:11-10.8). However, the Federation has not asserted the right to negotiate criteria for certification, but rather the qualifications beyond certification which a candidate for promotion would have to possess. Indeed, paragraph 17 of the agreement presupposes that a candidate will be certified.
At the bottom of the present dispute is the Federation's desire to have promotions made from within the North Bergen school system. Paragraph 17(a) provides that promotions should be made from within the system if staff members are certified and qualified. Paragraph 17(c) seems to preclude the board's right to appoint from outside the system if there are three or more qualified and certified members of the staff available from which to choose, although the power of appointment rests solely with the board under 17(e).
We conclude that the issue of the board's right to select candidates from either within or without the system involves major educational policy and as such must be considered a managerial prerogative. The board, in seeking the best qualified candidates for promotions, should not be restricted in its search to the faculty of the North Bergen schools. Since we do not regard this issue to involve a term *104 or condition of employment, it is neither negotiable nor arbitrable.
The issue of whether notice of promotional vacancies should be provided to all teachers has a more direct impact on the teachers and cannot be regarded as part of educational policy. Paragraph 17(a) allows teachers ten school days to file for vacancies. Such a provision clearly should be negotiable and arbitrable.
We conclude that, while the parties should meet to set promotional criteria, the ultimate criteria must be left to the board as a matter of major educational policy. Arbitrary action on the part of the board which bears no reasonable relationship to education goals, however, cannot and will not be tolerated. On the other hand, procedures by which promotional vacancies are filled should be negotiated, and if violated, be subject to arbitration. Such procedures would, of course, be subject to the board's ultimate authority to promote.
Affirmed.