UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, APPELLANT, v. UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY, COUNCIL OF AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS CHAPTERS, RESPONDENT.

STATE OF NEW JERSEY, APPELLANT, v. COUNCIL OF NEW JERSEY STATE COLLEGE LOCALS, NJSFT, AFT/AFL–CIO, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 20, 1988—Decided March 8, 1988.

Before Judges ANTELL, DEIGHAN and LANDAU.

*Melvin E. Mounts, Deputy Attorney General, argued the cause for appellant, State of New Jersey (*W. Cary Edwards, *Attorney General, attorney,* James J. Ciancia, *Assistant Attorney General, of counsel;* Barbara A. Harned, *Deputy Attorney General and* Melvin E. Mounts, *on the brief).*

*George W. Canellis,* argued the cause for respondent, Council of New Jersey State College Locals, NJSFT, AFT/AFL–CIO (*Dwyer & Canellis,* attorneys, *Michael E. Buckley,* on the brief).

*Robert E. Anderson,* General Counsel, argued the cause for respondent, Public Employment Relations Commission (*Robert E. Anderson,* on the brief).

*Mark D. Schorr,* argued the cause for respondent, University of Medicine and Dentistry of New Jersey, Council of American Association of University Professors Chapters (*Sterns, Herbert, Weinroth & Petrino,* attorneys; *Mark D. Schorr,* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by University of Medicine and Dentistry of New Jersey (UMDNJ) and six New Jersey State colleges (State)

from a Public Employment Relations Commission (PERC) decision that the institutions committed an unfair labor practice pursuant to *N.J.S.A.* 34:13A–5.4, subd. a(5) by unilaterally refusing to negotiate the issue of their respective mandatory retirement policies.

The parties have stipulated to the facts in this matter. In March 1985, New Jersey amended its civil rights laws to prohibit with certain exceptions mandatory retirement based on age in public and private employment. (*L.*1985, *c.* 73, effective October 1, 1985) One exception to the general prohibition against mandatory retirement was contained in § 4 and read as follows:

> ... an employee who has attained 70 years of age who is serving under a contract of tenure or similar arrangement providing for tenure at a public or private institution of higher education may, at the option of the institution be required to retire.

(*L.*1985, *c.* 73, § 4, as codified at *N.J.S.A.* 10:5–2.2.)

Relying upon the above cited amendment, the Board of Trustees at UMDNJ and at six State colleges (Jersey City State College, William Paterson College of New Jersey, Glassboro State College, Montclair State College, Trenton State College and Kean College of New Jersey) promulgated policies requiring mandatory retirement for faculty members attaining age 70. The mandatory retirement policies were promulgated and implemented by each State college and by UMDNJ without any negotiations with the unions representing the employees at these institutions. The policies became effective at the various institutions between October 1, 1985 and October 1, 1986.

With the exception of Jersey City State College and UMDNJ, the institutions' policies mandate retirement of all tenured employees at the end of the fiscal/academic year in which they attain age 70. The policy of Jersey City State College permits retention of unit members over age 70 in order "to retain highly qualified faculty whose performance remains outstanding in programs which evidence high demand and a low availability of qualified faculty" and/or "to retain an outstanding individual in

a subject area in which replacement is difficult." The UMDNJ policy permits exceptions to mandatory retirement based on the recommendation of the dean of the school and subject to approval by the Board of Trustees.

A total of three tenured faculty at the six State colleges were affected by the mandatory retirement policies in 1985–86. Two faculty were from Jersey City State College; one requested and was denied a waiver from the retirement policy and the second submitted a letter of intent to retire prior to implementation of the new policy. The third faculty member was from Glassboro State College and did not appeal, grieve or take any legal action with respect to the retirement.

On March 13, 1986 the Council of New Jersey State College Locals (Council) and the University of Medicine and Dentistry of New Jersey Council of American Association of University Professors (AAUP) filed respective unfair labor practice charges against the State of New Jersey and UMDNJ with PERC. The two unions who represent faculty members at UMDNJ and at the New Jersey State colleges asserted that the institutions violated New Jersey Employer–Employee Relations Act, specifically *N.J.S.A.* 34:13A–5.4, subd. a(1), (5) by adopting mandatory retirement policies for tenured faculty members without negotiating these policies with their respective unions. The State and UMDNJ countered by claiming that the issue of mandatory retirement was nonnegotiable. The parties agreed to consolidate the matters and on February 9, 1987 PERC issued its decision and order in the consolidated matters.

PERC held that the issue of mandatory retirement was mandatorily negotiable and that the State and UMDNJ committed an unfair labor practice by unilaterally instituting their respective policies. The State and UMDNJ were ordered to cease and desist from refusing to negotiate over mandatory retirement policies for tenured faculty, and to rescind any such policies implemented without negotiation. PERC limited its holding in a footnote by noting that it did not have before it any

union proposals on mandatory retirement and it cautioned that proposals that would interfere with managerial prerogatives would not be mandatorily negotiable.

In reaching its decision PERC applied the test of negotiability as set out in *In re IFPTE Local 195 v. State*, 88 *N.J.* 393, 403–404 (1982):

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy.

PERC found that the subject of retirement pertained to a term and condition of employment or an item that intimately and directly affected the work and welfare of tenured employees. It further held that negotiation was not preempted because *N.J.S.A.* 10:5–2.2 does not "speak in the imperative and leave nothing to the discretion of the public employers," the test for preemption as set forth in *Bethlehem Tp. Bd. of Educ. v. Bethlehem Tp. Educ. Ass'n*, 91 *N.J.* 38, 44 (1982). Additionally, it determined negotiation was not preempted by State pension statutes in that by enacting *N.J.S.A.* 10:5–2.2 the Legislature "clearly and unequivocally" authorized institutions to continue (or not to continue) employees after reaching age 70. Finally, PERC held that negotiation on the issue of mandatory retirement would not significantly interfere with an inherent management prerogative.

We agree with PERC's findings on the first two prongs of the *IFPTE* test. We disagree, however, with its decision on the third prong of the test respecting whether negotiation on mandatory retirement will significantly interfere with government policy-making. PERC essentially ruled that the broad issue of mandatory retirement as encompassed in the various institutions' policies was negotiable although particular union proposals which interfered with inherent management prerogatives would not be negotiable. We find the emphasis in this ruling misplaced and reverse, holding that an institution's decision to exercise its option to retire a tenured employee upon reaching

age 70 is not negotiable although the manner and means that the institution uses to implement its decision may be negotiable.

The State and UMDNJ argue on appeal that even after passage of *L*.1985, *c.* 73, the subject of employee pensions including mandatory retirement policies are insulated from negotiated agreement. Furthermore, they contend that negotiation on mandatory retirement would impermissibly interfere with an institution's inherent management prerogative to determine government policy.

AAUP and the Council counter by arguing that with passage of *L*.1985, *c.* 73, matters of retirement age were left to the discretion of institutions of higher education and as with other discretionary matters pertaining to terms and condition of employment, negotiation is mandated. They point to the history of various related statutes as reflecting a legislative understanding that the formulation of retirement policies did not come within the scope of inherent management prerogative. A brief review of this legislation is therefore appropriate.

Before passage of *L*.1985, *c.* 73 prohibiting mandatory retirement in general and allowing an institution of higher education at its option to retire tenured employees, the entire issue of retirement age in institutions of higher education was preempted by State pension statutes. Tenured employees who were covered by the Teachers' Pension and Annuity Fund Law and the Public Employees Retirement System were required to retire upon reaching 70 years of age with exceptions for continued employment upon written request of the employer. See *N.J.S.A.* 18A:66–43; *N.J.S.A.* 43:15A–47. The majority of the faculty at UMDNJ were enrolled in a third retirement program, Alternate Benefit Plan, which contained no mandatory retirement age. See *N.J.S.A.* 18A:66–168 *et seq.*

Prior to 1985 New Jersey's Law Against Discrimination, *N.J.S.A.* 10:5–2.1, explicitly provided that nothing in the discrimination laws was to be construed to interfere with the operation of the terms or conditions of any bona fide retirement

or pension program. Additionally, the New Jersey Employer–Employee Relations Act limited the scope of collective negotiations by the express stipulation that "nor shall any provision hereof annul or modify any pension statute or statutes of this State." *N.J.S.A.* 34:13A–8.1. In *Jacobs v. N.J. State Highway Authority,* 54 *N.J.* 393 (1969), the Supreme Court struck down a rule promulgated by the Authority which established a mandatory retirement age of 65 that conflicted with Public Employees Retirement System's (PERS) mandatory retirement age of 70. In reaching its decision the Court reasoned that:

> In view of the distortion of the actuarial assumptions that would result from the Authority's ... rule as well as the resulting insufficiency of its constributions to meet the demands imposed by such a rule ... such a rule should not be recognized unless authorized expressly or by unavoidable implication of the statute. (*Id.* at 403)

Subsequently, in *Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Education,* 79 *N.J.* 574, 582 (1979), the Court held that its reasoning in *Jacobs* was equally applicable to a negotiated clause of a collective agreement concerning a supplemental retirement benefits program which would encourage early retirement. The Court concluded that:

> ... actions taken by a state agency which may substantially affect retirement age and thus the actuarial assumptions of a statutory pension system are impermissible unless clearly and unequivocally authorized by the Legislature.

*See also, State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54 (1978).

This was changed with the passage of *L.*1985, *c.* 73 wherein the New Jersey Legislature prohibited mandatory retirement based on age in either public or private employment, excluded tenured employees at institutions of higher education from this general prohibition and, in the same legislation expressly authorized an institution at its option to retire a tenured employee upon reaching age 70.

In the 1985 amendments, the New Jersey Legislature amended *N.J.S.A.* 10:5–2.1 to provide as follows:

> Nothing contained in this act or in *P.L.*1945, *c.* 169 (*C.* 10:5–1, *et seq.*) shall be construed to require or authorize any act prohibited by law ... nor to interfere

with the operation of the terms or conditions and administration of any bona fide retirement, pension, employee benefit or insurance plan or program, including any State or locally administered public retirement system, provided that the provisions of those plans or programs are not used to establish an age for mandatory retirement. [1]

In this same bill the Legislature also amended the statutory provision applying to discrimination in private employment to provide:

It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:

a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, sex or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment ... provided further that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate, non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals, in the aggregate at least $27,000.00 ... [2]

In the 1985 amendments *N.J.S.A.* 10:3–1 which pertains to discrimination in public employment was modified to provide that:

Any provisions of law, executive order, rule or regulations to the contrary notwithstanding, no person other than a justice of the Supreme Court or a judge of the Superior Court pursuant to Article VI, Section VI, paragraph 3 of the Constitution of the State of New Jersey, or a judge of the Tax Court or a member of the Division of State Police, employed in the service of the State, or of any county or municipality thereof, or a member of a police or fire department employed in the service of the State or of any county or municipality thereof, shall be required to retire upon the attainment of a particular age unless the public employer can show that the retirement age bears a manifest relationship to the employment in question or that the person in the service of

---

[1] Underlined material represents addition by *L.*1985, *c.* 73, § 2, effective October 1, 1985.

[2] Underlined material added by *L.*1985, *c.* 73, § 3, effective October 1, 1985, codified at *N.J.S.A.* 10:5–12, subd. a.

the State, or of any county or municipality thereof, is unable to adequately perform his duties.

Finally, in the 1985 amendments the Legislature adopted the provision which is at issue here respecting the mandatory retirement of tenured employees at institutions of higher education:

Notwithstanding the provisions of section 1 of *P.L.*1938, chapter 295 (*c.* 10:3–1) and section eight of *P.L.*1962, chapter 37 (*c.* 10:5–2.1), an employee who has attained 70 years of age who is serving under a contract of tenure or similar arrangement providing for tenure at a public or private institution of higher education may, at the option of the institution be required to retire. (*L.*1985, *c.* 73, section 4, codified at *N.J.S.A.* 10:5–2.2).

Thus, encompassed within *N.J.S.A.* 10:5–2.2 are two legislative directives. First, tenured employees at both public and private institutions of higher education are exempted from coverage of the general prohibition against mandatory retirement based on age. Second, public institutions (private institutions always had this option) are expressly allowed to retire an individual upon reaching age 70, a decision previously preempted by pension statutes.

AAUP argues that if an institution's decision to retire a tenured employee were a management prerogative, an institution would have been free, even before passage of *L.*1985, *c.* 73, to establish a mandatory retirement policy. We do not find this argument persuasive. To the contrary, it only serves to illustrate that the issue of a mandatory retirement age encompasses more than one important governmental policy issue including the Legislature's interest in protecting the actuarial soundness of its public pension system, its commitment to end age discrimination in public and private employment and its desire to promote a quality system of higher education. That the Legislature may, at a given time, choose to give more weight to one area at the expense of another does not negate that each may involve a significant government policy.

■■ Public institutions of higher education are creatures of the State and can exercise only those powers granted to them by legislation, either expressly or by necessary implication.

*Fair Lawn Ed. Ass'n, supra,* 79 *N.J.* at 579. *N.J.S.A.* 18A:64G–1 *et seq.* authorizes UMDNJ to operate a "program of medical and dental education" and in carrying out this mandate, to appoint and fix the terms of faculty members needed to operate the education programs in the most "efficient and economical manner." *N.J.S.A.* 18A:64G–2 and –6. Similar statutory provisions exist that authorize State colleges to appoint, remove and transfer staff as may be needed to carry out their mandated purpose of providing higher education facilities. *See, e.g., N.J.S.A.* 18A:64–6. The decision as to what retirement policy will allow a public institution to best fulfill its mandated purpose is, in the absence of any legislation to the contrary, properly left as a non-negotiable management prerogative.

By enacting *N.J.S.A.* 10:5–2.2 and thereby allowing public and private institutions of higher education to retire tenured employees upon reaching age 70, the Legislature was not delegating government policy-making to these institutions. If that were the case, it would be questionable whether the Legislature could delegate such power, at least to the private institutions. Rather, the Legislature was cutting back on its own exercise of legislative power both by exempting tenured employees at private and public institutions from its prohibition against mandatory age-based retirement programs *and,* by unequivocally informing public institutions that public pension statutes no longer controlled the issue of retirement age, leaving a public institution empowered to make those policy decisions it considered necessary to operate its educational program in the most "efficient and economical manner."

New Jersey Public employees have a constitutional right to organize and present proposals for negotiation. *N.J. Const.* (1947), Art. 1, Par. 19. In contrast, however, to the private sector where an employer may choose to negotiate on any item, the scope of negotiation in the public sector is limited by statute to "terms and conditions of employment" and is further constrained by the policy goals underlying the relevant statutes and by the Constitution. *N.J.S.A.* 34:13A–5.3. The employer in

the public sector is the government which is held to have special responsibilities to the public not shared by private employers. A public employer has a unique responsibility to make and implement public policy which is properly decided not by collective bargaining but by the political process. As the Court stated in *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.*, 78 *N.J.* 144, 163 (1978):

> A private employer may bargain away as much or as little of its managerial control as it likes. However, the very foundation of representative democracy would be endangered if decisions on significant matters of governmental policy were left to the process of collective negotiation, where citizen participation is precluded. This Court would be most reluctant to sanction collective agreement on matters which are essentially managerial in nature, because the true managers are the people. Our democratic system demands that governmental bodies retain their accountability to the citizenry. [Citations omitted]

All decisions on terms and conditions of employment may impinge to some extent on management prerogative and most management decisions affect the work and welfare of public employers. *In re IFPTE Local 195 v. State*, 88 *N.J.* 393, 404 (1982). To decide whether the interference with government policy-making is significant involves a balancing of the interests of the public employer and public employee. As Justice Schreiber wrote in *Woodstown–Pilesgrove*:

> The nature of the terms and conditions of employment must be considered in relation to the extent of their interference with managerial prerogatives. A weighing or balancing must be made. When the dominant issue is [an educational] goal, there is no obligation to negotiate and subject the matter, including its impact, to binding arbitration. Thus these matters may not be included in the negotiations and in the binding arbitration process even though they may affect or impact upon the employees' terms and conditions of employment. (*Bd. Ed. W'dst'n–Pilesgr. Sch. v. W'dst'n–Pilesgr. Ed. Ass'n*, 81 *N.J.* 582, 591 (1980)).

In determining what is significant, the Court has focused on the extent to which the issue involves an educational purpose. Thus, institutions are required to negotiate on matters intimately and directly affecting an employee's working terms and conditions such as compensation, hours, work loads, sick leaves, personal and sabbatical leaves, physical accommodations and grievance procedures where the thrust of the decision does not

334

impact on an institution's educational purpose. *Burlington Cty. Col. Fac. Ass'n v. Bd. of Trustees,* 64 *N.J.* 10, 14 (1973). In contrast courts have consistently held that the decision to hire, retain, promote, transfer or dismiss employees is an inherent management prerogative concerning sensitive educational policy and cannot be negotiated away. *See, e.g., Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n,* 94 *N.J.* 9 (1983) (hire); *N. Bergen Tp. Bd. of Educ. v. N. Bergen Fed'n of Teachers,* 141 *N.J.Super.* 97 (App.Div.1976) (promote or hire); *Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed.,* 78 *N.J.* 144 (1978) (transfer); *Bd. of Educ., Wyckoff Tp. v. Wyckoff Educ. Ass'n,* 168 *N.J.Super.* 497, 501 (App.Div.1979), certif. den. 81 *N.J.* 349 (1979) (retain); *Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n,* 98 *N.J.* 523 (1985) (abolish position); and *Bethlehem Township Bd. of Ed. v. Bethlehem Tp. Ed. Ass'n,* 91 *N.J.* 38 (1982) (teacher evaluations and teacher dismissals). Other decisions that the courts have held to be nonnegotiable are school calendar, *Burlington Co. Col. Fac. Ass'n v. Burlington Co. Col. Bd. of Trustees,* 64 *N.J.* 10 (1973); and subcontracting, *In re IFPTE Local 195 v. State,* 88 *N.J.* 393 (1982).

▮ Turning to the decision at issue in this case respecting whether a tenured employee should be required to retire upon reaching age 70, we find that the dominant concern underlying the decision to retire an individual at age 70 is how the institution can best achieve its mandated educational purpose. It implicates important trade-offs between the desire of an individual to continue working and the expertise which he provides versus an institution's need to bring in new faculty, to deploy its faculty in different academic areas and to open up tenure and promotional positions in order to retain its current faculty and to afford equal employment opportunities.

The findings made by the various institutions in their implementing resolutions adopting the retirement policies illustrate the managerial and academic decisions involved. For example,

the resolution adopted by Glassboro State College found that "the number of available faculty positions will continue to be closely related to the number of retirements" and that "the ability to employ new faculty is essential to the vitality of the academic environment and the Affirmative Action Program of the College." Similarly, the resolution adopted by Trenton State College found that

> [t]he opportunities to employ new faculty are significantly influenced by the number of retirements; ... [t]he vitality of the academic environment in service to students is affected by the ability to employ and promote new personnel, and ... [t]he ability to recruit and appoint new personnel is important to the Affirmative Action Program of the College....

The federal Age Discrimination in Employment Act, 29 *U.S. C.* § 621 *et seq.* (ADEA) which bans discrimination in hiring or discharging on the basis of age also incorporated an exception for tenured employees at institutions of higher education (29 *U.S.C.A.* § 631(d)) based on a similar rationale to that expressed in the New Jersey institutions' implementing resolutions:

> Many colleges and universities maintain that for the foreseeable future the number of available faculty positions will be closely related to the number of retirements, thereby making it difficult to employ younger professors, particularly women and minorities. Moreover, the financial burden on already hard-pressed institutions of higher learning may be increased by this legislation, because it may require the retention of highly paid senior employees for additional years.
>
> *Ruzicho & Jacobs, Litigating Age Discrimination Cases*, § 1.10 at 24. *Citing to S.Rep. No. 4903*, 95th Cong., 1st Sess. 8–9 (1977).[3]

Nothing could be more germane to the educational goals of an institution of higher education than the vitality of that institution as reflected in its ability to hire, retain and deploy its

---

[3]That Congress has some discomfort with the assumptions underlying the exception for tenured employees is illustrated by the fact that it deleted the exception for tenured employees at institutions of higher education in July 1982, only to reenact it in 1986 effective until December 31, 1993. In the intervening five years, the Equal Employment Opportunity Commission is to contract for a study to analyze the potential consequences of mandatory retirement on institutions of higher education. *Pub.L.* 99–592, § 6, October 31, 1986, 100 *Stat.* 3344.

faculty. Thus, it is unquestionable that the issue of mandatory retirement encompasses an inherent management prerogative. To open the substantive decision of whether to retire an individual upon attaining age 70 to collective negotiation might significantly impair the ability of an institution to resort to that option. As the Court pointed out in *IFPTE*, to impose a legal duty upon the public employer to negotiate transfers the "locus of the decision from the political process to the negotiating table." *In re IFPTE Local 195, supra,* 88 *N.J.* at 408. This potential interference with an inherent management prerogative is, by itself, sufficient to render the issue of mandatory retirement nonnegotiable.

We are further persuaded that the matter is nonnegotiable by our awareness that the issue of mandatory retirement and an institution of higher education's exemption from it embodies a sensitive and important social policy potentially at odds with New Jersey's Laws Against Discrimination. As this court recently held in *Boylan v. State,* 222 *N.J.Super.* 313, 334 (App.Div.1988), exemptions from the federal and state laws prohibiting age discrimination must be construed narrowly so as to further the laws' broader purpose of preventing unwarranted age discrimination. To open the issue of mandatory retirement to collective negotiations might expand the situations where early retirement is required from only those instances where an institution felt it was necessary in order to achieve its educational purpose to any situation where for whatever reason an institution and collective bargaining unit agreed to include mandatory retirement in their negotiated agreement.

Notwithstanding our holding that the substantive decision as to whether an individual will be required to retire upon reaching age 70 is nonnegotiable, courts have distinguished between substantive policy-making powers of employers and the procedural rights of employees. Negotiations on procedures governing a staff reduction, *N.J. State Col. Locals v. State Bd. of Higher Educ.,* 91 *N.J.* 18, 32–33 (1982); procedures for imple-

menting transfers and reassignment, *In re IFPTE Local 195 v. State,* 88 *N.J.* 393, 417 (1982); promotional procedures, *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 90–91; procedures for teacher evaluations, *Bethlehem Tp. Bd. of Ed. v. Bethlehem Tp. Ed. Ass'n,* 91 *N.J.* 38, 50 (1982); and procedures for notice of layoff, *Old Bridge Tp. Bd. of Educ. v. Old Bridge Educ. Ass'n,* 98 *N.J.* 523 (1985) have all been held negotiable matters even though the substantive decision is not.[4]

The line between a substantive and procedural matter is sometimes indistinct and giving a matter a particular label may not resolve the issue. *See, e.g., Bethlehem Township Bd. of Educ., supra,* 91 *N.J.* at 50 (although a particular negotiating proposal was labeled as procedural, it must still yield to an inherent management prerogative). Any questions concerning the negotiability of a particular retirement procedure proposal would have to be resolved in a scope of negotiation proceeding. At this time, we can only reaffirm as implied in PERC's determination that the manner and means an institution uses to implement its decision to retire a tenured employee may be negotiable.

In summary, we agree with that portion of PERC's ruling which found that the issue of mandatory retirement concerns a term and condition of employment and that negotiation is not fully preempted by statute. We hold, however, that the substantive decision to retire a tenured employee upon reaching age 70 is an inherent management prerogative concerning important educational policy and is therefore not negotiable. Notwithstanding this, negotiation may take place on the procedural aspects of mandatory retirement as it affects tenured employees.

---

[4]We also note that at least one of the public institutions, UMDNJ, agreed in the Stipulations to negotiate on procedural matters surrounding the implementation of its retirement policy.

We emphasize that our decision today does not grant an institution of higher education limitless freedom to institute a policy of mandatory retirement for any reason. Nor can it institute such a policy for the impermissible purpose of discriminating on the basis of age. The institution's action must be rationally related to a legitimate educational policy and must reflect an accommodation of the institution's needs to hire, deploy and retain faculty versus a state-wide prohibition against mandatory age-based retirement.

Reversed.