**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2173-16T4

WEST MORRIS REGIONAL HIGH
SCHOOL BOARD OF EDUCATION,

    Petitioner-Respondent,

v.

MORRIS REGIONAL EDUCATION
ASSOCIATION,

    Respondent-Appellant.

_____

Argued May 23, 2018 — Decided August 28, 2018

Before Judges Koblitz and Suter.

On appeal from the New Jersey Public Employment Relations Commission, P.E.R.C. No. 2017-29.

Samuel B. Wenocur argued the cause for appellant (Oxfeld Cohen, PC, attorneys; Samuel B. Wenocur, on the brief).

Matthew J. Giacobbe argued the cause for respondent West Morris Regional High School Board of Education (Cleary, Giacobbe, Alfieri & Jacobs, LLC, attorneys; Matthew J. Giacobbe, Gregory J. Franklin and Jessica V. Henry, of counsel and on the brief).

Christine R. Lucarelli, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission

(Robin T. McMahon, General Counsel, attorney; Christine R. Lucarelli, on the statement in lieu of brief).

PER CURIAM

The West Morris Education Association (Association) appeals from a determination by the Public Employment Relations Commission (PERC) on December 22, 2016, that the start and end date of the school calendar was a non-negotiable managerial prerogative. We affirm PERC's decision.

The West Morris Regional High School Board of Education (Board) and the Association negotiated a collective bargaining agreement (contract) for the period from July 1, 2013 to June 30, 2016. On June 20, 2016, during its negotiation of a successor contract with the Association, the Board filed a scope of negotiation petition with PERC that requested PERC's determination about a claimed managerial prerogative. In the parties' earlier contract, Article VII, Section A entitled "Work Year/Work Day/Work Load" provided that:

> Effective July 1, 2004, teachers employed on a [ten] month basis <u>shall be employed from September 1 through June 30</u> and shall report to work in accordance with the calendar adopted by the Board not to exceed 184 days of work for teachers, and not to exceed 181 days of instruction for students.
>
> [(emphasis added).]

The Board contended the phrase "shall be employed from September 1 through June 30" must be "removed from the [a]greement because it unlawfully interferes with the Board's managerial prerogative to establish the school calendar." The Board argued it could exercise its managerial prerogative to change the start date of the school year without affecting employees' salaries and that the school calendar was an educational policy goal that did not require mandatory negotiation.

The Association opposed the petition, contending that its members would be negatively impacted if the Association could not negotiate the school calendar. However, it stated the "precise impacts of any future action cannot be fully ascertained at this time." If the Board had a different start date for any one school, the Association argued there would be a lack of cohesiveness. Also, starting school in the summer months could cause health concerns because some schools did not have air conditioning. The Association admitted that the "actual impact of changing the calendar may currently be unknown, [but] it will be significant." The Association also argued the number of teaching days could not be changed and any change should not apply to the contract that was in effect.

PERC's December 22, 2016 decision held that "the contested clause[,] ["shall be employed from September 1 through June 30,"]

is not enforceable as it relates to a non-negotiable managerial prerogative." PERC stated "[i]t is well settled that the setting of a school calendar in terms of when school begins and ends is a non-negotiable managerial prerogative," citing to Burlington Cty. Coll. Faculty Ass'n v. Burlington Cty. Coll. Bd. of Trs., 64 N.J. 10, 15-16 (1973). PERC relied on N.J.S.A. 18A:36-2, which provides that "the board of education shall determine annually the dates, between which the schools of the district shall be open . . . ." It rejected the Association's argument that Piscataway Twp. Educ. Ass'n v. Piscataway Twp. Bd. of Educ., 307 N.J. Super. 263, 267-68 (App. Div. 1998), required a decision in its favor, concluding that "[t]he facts of this case do not resemble the unusual circumstances confronted by the court in Piscataway, and any potential impact to Association members from a possible future calendar change is speculative only." PERC decided the contested clause was a managerial prerogative, even though it was part of the parties' earlier contract.

On appeal, the Association argues that although the Board has the managerial prerogative to establish a school calendar for students, the Board must negotiate with the Association about the teachers' calendar for the days when students are not present, including the date that teachers are to start. It claims that N.J.S.A. 18A:36-2 only applies to student calendars. It disagrees

with PERC's interpretation of <u>Burlington County</u>, and argues that requiring teachers to report before September 1 is contrary to the concept of a ten-month employee, citing various statutes and regulations.

"The Legislature has vested PERC with 'the power and duty, upon the request of any public employer or majority representative, to make a determination as to whether a matter in dispute is within the scope of collective negotiations.'" <u>In re Belleville Educ. Ass'n</u>, __ N.J. Super. __, __ (App. Div. 2018) (slip op. at 16) (quoting N.J.S.A. 34:13A-5.4(d)). "The standard of review of a PERC decision concerning the scope of negotiations is thoroughly settled. The administrative determination will stand unless it is clearly demonstrated to be arbitrary or capricious." <u>Ibid.</u> (quoting <u>City of Jersey City v. Jersey City Police Officers Benevolent Ass'n</u>, 154 N.J. 555, 568 (1998)).

"Questions concerning whether subjects are mandatorily negotiable should be made on a case-by-case basis." <u>Troy v. Rutgers</u>, 168 N.J. 354, 383 (2001) (citing <u>City of Jersey City</u>, 154 N.J. at 574). A three-part test applies to scope of negotiations determinations. <u>In re Local 195, IFPTE</u>, 88 N.J. 393, 403 (1982). An issue is negotiable when:

> (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially

preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.

[Id. at 404-05.]

The Association acknowledges that the Board has the managerial prerogative to determine the school calendar for students, but argues the calendar for teachers on work days when students are not present must be negotiated. PERC did not have the opportunity to address this argument because the Association did not raise it before PERC. We address the argument to resolve it although "[g]enerally, an appellate court will not consider issues . . . which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012).

There was nothing arbitrary, capricious or unreasonable about PERC's decision that the contract language at issue implicated the Board's managerial prerogative. It is well established that setting the school calendar is a managerial prerogative.

In Bd. of Educ. v. Woodstown-Pilesgrove Reg'l Educ. Assoc., 81 N.J. 582, 592 (1980), an arbitrator awarded teachers' compensation when they were required to work two additional hours on the day before Thanksgiving. The Board filed a complaint seeking to set aside the award. In affirming the award, the Court stated that "[e]stablishing the school calendar in terms of when school commences and terminates is a non-negotiable managerial decision." Ibid. However, because the two hours at issue did not "significantly or substantially trench[] upon the management prerogative," the Court agreed that the issue was negotiable. Id. at 594.

In Burlington County, the issue was whether the College Board of Trustees was required to negotiate the format of the college calendar with the faculty members' representative. The calendar fixed the days the college was "open with courses available to students" but did not "fix the days and hours of work by individual facility members or their workloads or their compensation." 64 N.J. at 12. The Court held that the calendar "was not a subject of mandatory negotiation," even though it "undoubtedly has some practical effect on the facility's employment arrangements." Id. at 13. The Board

> negotiated on the matters directly and
> intimately affecting the faculty's working
> terms and conditions, such as compensation,

> hours, workloads, sick leaves, personal and sabbatical leaves, physical accommodations, grievance procedures, etc. It declined to negotiate the major educational policy of the calendar though it did make provision in its governance structure for a calendar committee with student, facility and administration representatives.
>
> [Id. at 14.]

Burlington County did not distinguish between the calendar for students and the calendar for teachers. It made reference to out-of-state cases that took conflicting positions on the issue of whether the calendar was negotiable, noting that the cases had "little pertinence here" because they "turn on the particular provisions of their own statutes, which differ from ours." Id. at 14. Comments quoted by the parties from those cases were simply illustrative of that conflict.

The Association argues that N.J.S.A. 18A:36-2 should be read in pari materia with the New Jersey Employer-Employee Relations Act (the Act), N.J.S.A. 34:13A-1 to -43, to limit its applicability to the student calendar and not the teachers' calendar. N.J.S.A. 18A:36-2 provides that "[t]he board of education shall determine annually the dates, between which the schools for the district shall be open, in accordance with the law." The statute is not limited in the manner suggested by the Association; the Association cites no supporting authority for its argument. In fact, the Act

provides to the contrary stating, "nor shall any provision here annul or modify any . . . statutes of this State." N.J.S.A. 34-13A-8.1.

The Association's distinction between the two calendars undercuts the managerial prerogative that it acknowledges. If the teachers' calendar were negotiable as the Association suggests, the student calendar would be controlled by it because that calendar could only be set within the boundaries negotiated for the teachers' calendar.

We agree with PERC that Piscataway Twp. Educ. Ass'n v. Piscataway Twp. Bd. of Educ., 307 N.J. Super. 263, 265 (App. Div. 1998), does not require a different outcome. In Piscataway, the superintendent changed the school calendar during the school year because of unexpected snow days by cancelling certain school holidays and adding school days to the end of the school year. The Piscataway Township Education Association filed an unfair practice charge that later was dismissed by PERC. In Piscataway, we said that a change in the school's calendar "is a managerial prerogative of the school administration which cannot be bargained away. As such, it need not be negotiated." Id. at 265. However, Piscataway also said that whether the "impact" of the calendar change on the "work and welfare of public employees" needs to be negotiated depends on "whether negotiating the impact issue would

significantly or substantially encroach upon the management prerogative. If yes, the duty to bargain must give way. If . . . no, bargaining should be ordered." Id. at 265; 276.

We agree with PERC that the facts in Piscataway are dissimilar from this case. Here, the issue does not involve a mid-year change in the calendar; it involves the negotiation of a new contract. PERC found "any potential impact to Association members from a possible future calendar change [was] speculative only."

On appeal, the Association raises other alleged "potential significant harms" that were not presented to PERC when the issue was before them.[1] When the Association was before PERC, it said the impact could not be "fully ascertained at this time" and that the impact was "unknown," mentioning only the need for "cohesiveness" in schedules and health concerns due to lack of air conditioning. PERC's decision was not arbitrary, capricious or unreasonable by not speculating about the impacts that the Association presented as unknown.

Finally, the Association contends PERC's decision "throws [previous] decisions and regulations into chaos," citing to statutes, regulations, and cases referencing ten-month calendar

---

[1] These include child care costs, teachers performing outside second jobs, and the need for some teachers to take their own children to college.

employees and others referencing the school year commencing on September 1. These arguments also were not made to PERC and thus, we decline to address them. See Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We do not know whether the parties negotiated a new contract nor what that said about the issues the Association claims may be affected. We will not speculate about the application of statutes and regulations that were not raised before PERC or their impact without an appropriate record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION