**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4316-18T2

IN THE MATTER OF
SOUTHAMPTON TOWNSHIP
BOARD OF EDUCATION,

     Appellant/Cross-Respondent,

and

SOUTHAMPTON TOWNSHIP
EDUCATION ASSOCIATION,

     Respondent/Cross-Appellant.

_____

Argued telephonically May 6, 2020 –
Decided May 29, 2020

Before Judges Gilson and Rose.

On appeal from the New Jersey Public Employment Relations Commission, Docket No. CO-2018-269.

Robert A. Muccilli argued the cause for appellant/cross-respondent (Capehart & Scatchard, PA, attorneys; Robert A. Muccilli of counsel and on the briefs).

Sanford R. Oxfeld argued the cause for respondent/cross-appellant (Oxfeld Cohen, PC,

attorneys; Samuel Benjamin Wenocur of counsel and on the briefs).

Frank C. Kanther, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine R. Lucarelli, General Counsel, attorney; Frank C. Kanther on the statement in lieu of brief).

PER CURIAM

In this public employment matter, the Southampton Township Board of Education appeals a final agency decision of the Public Employment Relations Commission (PERC), finding the Board engaged in an unfair labor practice by unilaterally changing the start of the faculty's 2018-19 school year. On appeal, the Board argues PERC erred by interfering with its managerial prerogative to establish the school calendar, and by relying on the previous year's school calendar in reaching its decision rather than remanding the matter for an evidentiary hearing. The Southampton Township Education Association cross-appeals, seeking to strike dictum in PERC's decision, and claiming PERC erroneously failed to enforce its order against the Board regarding the start of the 2019-20 faculty school year. We affirm the Board's appeal and dismiss the Association's cross-appeal.

2

I.

The Association is the collective bargaining agent representing certain faculty of the Board, a public employer within the meaning of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -39. The collective bargaining agreement between the parties established the total faculty workdays per year, including those days that are designated as "student contact days." The agreement is silent as to when the school year begins and "when calendar days of any type will be scheduled."

In March 2018, the Board adopted the 2018-19 school year calendar. The calendar required faculty to report for two non-student days on August 29 and 30, 2018 – the Wednesday and Thursday immediately before Labor Day weekend – with students first reporting for classes on Tuesday, September 4. In doing so, the Board required the faculty work year to begin three business days – including the Friday off day – before the start of the student school year. By contrast, at the start of the previous school year, faculty reported for two non-student workdays on September 5 and 6, 2017 – the Tuesday and Wednesday after Labor Day weekend – with students reporting for classes on Thursday, September 7. Unlike the 2018-19 calendar, the 2017-18 faculty work year

commenced two business days immediately before students reported, and did not start until September.

The Association objected to the Board's unilateral adoption of the 2018-19 faculty calendar, claiming the changes from the prior year and the resulting impact were mandatorily negotiable under the Act. Following the parties' failed attempts to resolve the matter, the Association filed an unfair labor practice charge before PERC.

Acting on the parties' cross-motions for summary judgment, including their "stipulations, exhibits, and certifications," PERC issued a written decision, concluding the Board engaged in an unfair labor practice under N.J.S.A. 34:13A-5.4(a)(1)[1] and (5)[2] "by unilaterally changing the 2018-19 faculty work year beyond what was necessary to coincide with the start of and preparation for the student school year, and refusing to negotiate over the change." PERC ordered the Board to "cease and desist" from "unilaterally changing the timing

---

[1] N.J.S.A. 34:13A-5.4(a)(1) prohibits public employers from "[i]nterfering with, restraining or coercing employees in the exercise of the rights guaranteed to them by th[e] act."

[2] N.J.S.A. 34:13A-5.4(a)(5) prohibits public employers from "[r]efusing to negotiate in good faith with a majority representative of employees in an appropriate unit concerning terms and conditions of employment of employees in that unit, or refusing to process grievances presented by the majority representative."

of non-student faculty workdays in relation to the start of the student school year" and to negotiate with the Association in good faith regarding "any proposed changes to the non-student faculty work year."

In its written decision that accompanied its order, PERC thoroughly considered the parties' arguments and the stipulated evidence. Citing well-established case law, PERC initially recognized: "A school board has the managerial prerogative to set the dates the schools are open and the dates for the student school year." Accordingly, PERC noted "[t]he establishment of a school calendar in terms of when school commences and terminates is a non-negotiable managerial prerogative" of the Board. See Bd. of Educ. v. Woodstown-Pilesgrove Reg'l Educ. Ass'n., 81 N.J. 582, 592 (1980); Burlington Cty. College Faculty Ass'n v. Bd. of Trustees, 64 N.J. 10, 16 (1973); see also Piscataway Twp. Educ. Ass'n v. Piscataway Twp. Bd. of Educ., 307 N.J. Super. 263, 270 (App. Div. 1998).

But PERC further observed New Jersey courts and the agency have recognized "those non-teaching/non-student aspects of the faculty work year that are mandatorily negotiable." See Woodstown-Pilesgrove Reg'l Educ. Ass'n., 81 N.J. at 592; Piscataway Twp. Educ. Ass'n, 307 N.J. Super. at 270 n.2. PERC then found "once the overall school calendar and the student days are

5

established, negotiations over the timing and placement of non-student faculty work[]days within that school calendar are mandatorily negotiable unless a board can demonstrate that it would significantly interfere with educational policy goals."

According to PERC, the Board failed to "articulate[] an educational policy reason for adding an extra day to the faculty work year that – while not a duty day – further truncated the faculty's summer breaks and required their availability earlier than their usual two business days immediately preceding the start of the student school year." Relevant to the Association's cross-appeal, PERC observed in dictum that had the Board "simply shifted" the two non-student faculty days to the Thursday and Friday before the Labor Day weekend – with students starting the Tuesday after Labor Day – PERC likely would have concluded the schedule change was within the Board's non-negotiable managerial prerogative.

After PERC rendered its decision, the Board established the 2019-20 school calendar, which was similar to the 2017-18 calendar but began the school year in August. When the Board refused to negotiate, the Association sought enforcement of PERC's order. PERC denied the Association's motion, finding the Board's 2019-20 calendar complied with its order, which was issued after

6

consideration of the stipulated record before the agency. To the extent the Association sought relief based on newly-submitted evidence, PERC declined to consider the application, suggesting instead that the Association file another unfair practice charge.

While the parties' appeals were pending, the Association filed a new unfair practice charge with PERC, which the parties settled soon thereafter. Accordingly, PERC approved withdrawal of the charge and closed the matter.

II.

A.

We begin our review of the Board's appeal, recognizing the Legislature has expressly authorized PERC to determine whether a "matter in dispute is within the scope of collective negotiations." N.J.S.A. 34:13A-5.4(d). Accordingly, we defer to PERC's expertise in public sector employer-employee relations. In re Hunterdon Cty. Bd. of Chosen Freeholders, 116 N.J. 322, 328 (1989). Indeed, "[t]he standard of review of a PERC decision concerning the scope of negotiations is thoroughly settled. The administrative determination will stand unless it is clearly demonstrated to be arbitrary or capricious." City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 568 (1998) (internal quotation marks omitted).

"Questions concerning whether subjects are mandatorily negotiable should be made on a case-by-case basis." Troy v. Rutgers, 168 N.J. 354, 383 (2001) (citing City of Jersey City, 154 N.J. at 574). A three-part test applies to scope of negotiations determinations. In re Local 195, IFPTE, 88 N.J. 393, 403 (1982). An issue is negotiable when: "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy." Id. at 404-05.

Pursuant to our limited standard of review, City of Jersey City, 154 N.J. at 567, we affirm substantially for the reasons expressed by PERC in its well-reasoned written decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D). The undisputed record before PERC clearly demonstrates the Board unilaterally commenced the 2018-19 faculty work year three business days before the start of the student school year, adding a day to the faculty calendar when compared to the previous year. The Board's action involved more than "simply shifting" the student and teacher start dates in relation to the prior year. There was nothing arbitrary or capricious

about PERC's decision that the Board's action was mandatorily negotiable. Woodstown-Pilesgrove Reg'l Educ. Ass'n., 81 N.J. at 592.

To the extent not otherwise addressed, the Board's remaining arguments lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

### B.

We turn to the Association's cross-appeal, observing initially that its challenge to the enforcement of PERC's order is moot. We consider an issue "moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (citation omitted); see also R. 2:8-2. As stated above, after the Association filed a new unfair labor practice challenge, the parties resolved their dispute and the Association withdrew its charge, thereby rendering the issue moot.

As to the Association's challenge to a statement of PERC's decision – that the Association readily acknowledges is dictum – we lack jurisdiction to consider its argument. See Bandler v. Melillo, 443 N.J. Super. 203, 210-11 (App. Div. 2015). We have long recognized, "appeals are taken from judgments

"[or orders]" and not from opinions, let alone dicta." See <u>Glaser v. Downes</u>, 126 N.J. Super. 10, 16 (App. Div. 1973).

Accordingly, we dismiss as moot the Association's argument that PERC erroneously refused to enforce its order, and dismiss for lack of jurisdiction the Association's challenge to dictum in PERC's decision.

Affirmed in part; dismissed in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4316-18T2